# CASES IN CHANCERY.

---

## KEIRSTED and others vs. AVERY and others.

Where a deed was delivered as an escrow, to be delivered to the grantee upon the payment of a sum of money due from him to the grantor, and one of the heirs at law of the grantor, after the death of the latter, settled with the grantee and delivered the deed to him, which was thereupon duly recorded, it was held to be a valid delivery as to such heir.

The lien of a judgment creditor upon the lands of his debtor is subject to all equities which existed in favor of third persons against such lands at the time of the recovery of the judgment.

The court of chancery will protect the equitable rights of third persons against the legal lien of a judgment, and will limit such lien to the actual interest which the judgment debtor has in the estate.

THE bill in this case was filed to set aside a sheriff's sale of a lot of land called the Wynkoop farm, in the county of Tioga, and to settle the equitable rights of the parties to the lot. The facts of the case, so far as is necessary to understand the questions of law decided, are stated in the opinion of the chancellor.

1832.
April 17.

*J. Sudam,* for the complainants.

*J. A. Collier,* for the defendants.

THE CHANCELLOR. For the purpose of understanding the several questions which arise in this suit, it is necessary to advert to a great variety of transactions, not only in relation to the Wynkoop farm, the subject of controversy here, but also to another lot formerly owned by Maxwell and Matthews. Previous to the year 1806, Benjamin Wynkoop had acquired a valid title to the premises in question—a farm of about 600

VOL. IV.                    2

acres of land, in the county of Tioga. A judgment was re-
covered against Wynkoop in the supreme court, in favor of
J. M'Bride, for $675,32, which was docketed in May, 1803.
To accommodate Wynkoop, Guy Maxwell, his brother-in-
law, who was then a man of considerable wealth, paid the
amount due on the judgment and took an assignment there-
of. In the spring of 1806, Maxwell caused the Wynkoop farm
to be sold on an execution upon that judgment, and bid the
same in for the sum of $250. He took a deed from the sheriff
in May, 1806, but which deed was never acknowledged or re-
corded. On the 11th of November, 1809, Maxwell executed
a re-conveyance of the farm, and delivered the same to V.
Matthews, as an escrow, to be delivered to Wynkoop upon his
paying what was due on account of the M'Bride judgment.
At the time of the execution of this deed, G. Maxwell also
made and delivered to Matthews a written declaration, stat-
ing the delivery of the deed as an escrow, to be delivered to
Wynkoop upon the payment to Maxwell of $1000 in one
year. These papers remained in the hands of Matthews un-
til after the death of Maxwell, in February, 1814, and were
then delivered to his widow. In April, 1814, Thomas Max-
well, one of the defendants, a son and heir of G. Maxwell,
who appears to have died intestate, wrote to Wynkoop, in-
forming him of the delivery of the deed to Matthews with di-
rections to have it delivered to him whenever a settlement of
the affairs between G. Maxwell and him should be made, and
requesting him to come and settle, &c. In June, 1814, a set-
tlement was made, by Wynkoop and T. Maxwell, of the ac-
counts between the former and the father of the latter, includ-
ing the notes given by G. Maxwell for the purchase of the
M'Bride judgment. On that settlement a balance of $8,34
was found due to the estate of G. Maxwell, for which T.
Maxwell took Wynkoop's note; and both parties signed a
written statement at the foot of the account, showing that it
was settled. T. Maxwell, at the same time, delivered the
deed of November, 1809, to Wynkoop. In October, 1816,
Matthews, who was one of the subscribing witnesses to the
deed, proved the execution thereof before a master in chance-
ry, and a certificate of such proof was endorsed by the master

on the deed in due form of law to authorize it to be record-ed. In 1816, T. Gold recovered two judgments in the supreme court against Wynkoop, on which the farm was sold by the sheriff of Tioga to A. Dana, the assignee of the judgments, in September, 1817. The deed from the sheriff to Dana was duly acknowledged, and was recorded on the 20th of September, in the same year. In November, 1818, the complainants obtained a judgment against Wynkoop, on a bond and warrant, for $1750 debt and $15,25 damages and costs. This judgment was for monies advanced to Wynkoop to redeem his farm from the sale to Dana. This proving insufficient, the complainants paid Dana the further sum of $474,50, and some other expenses for sheriff's fees, &c. and Dana thereupon, by a deed of the 29th of October, 1818, conveyed the farm to the complainants. This deed was duly proved by William Maxwell, one of the defendants, who was the agent of the complainants in making the arrangement with Dana, and was recorded by T. Maxwell, who was then clerk of the county, on the 29th of April, 1819. Upon this conveyance, the complainants' claim to the farm rests.

In November, 1803, Jacob R. De Witt and others conveyed to Guy Maxwell and Vincent Matthews lot 195, in Newtown in the county of Tioga, and took back a bond and mortgage to secure the payment of $1881,23; which mortgage was registered the 6th of June, 1804. Considerable payments were made from time to time on this bond and mortgage. A suit was afterwards brought on the bond, against Maxwell and Matthews, in the supreme court; and in July, 1809, while G. Maxwell held the title to the Wynkoop farm, a judgment was recovered for the penalty of the bond, and $41,26 damages and costs. This judgment was a lien upon considerable real estate belonging to Matthews and Maxwell severally, as well as upon a part of the lands embraced in the mortgage, which had not then been sold. In December, 1812, a fi. fa. was issued on this judgment, returnable at the January term thereafter, and was delivered to the sheriff of Tioga, with a direction endorsed thereon requiring the sheriff to levy $1608,51 debt and $41,26 damages and costs, with interest on debt from 20th July, 1807; and all receipts given since 1st

November, 1810, to be allowed in payment. At the time this execution was placed in the sheriff's hands, Maxwell and Matthews had personal property sufficient to satisfy the whole amount due thereon. The sheriff called upon them, and their property was pointed out to him; but he did not make an actual levy on it, or take it out of their possession. After the return day of the execution, in February, 1813, Maxwell and Matthews filed a bill in this court to stay the proceeding on the judgment and mortgage; and they obtained an injunction, which has never been dissolved. After the service of this injunction on the sheriff, he took no further care of the personal property of Maxwell and Matthews, and it was used by them or sold on other executions. The real property of G. Maxwell, which he owned at that time, has also been sold under junior judgments; and the defendant, William Maxwell, in March, 1818, became the owner of the undivided half of seven acres, part of that real estate. He also became the owner of another parcel thereof, containing about 40 acres, in July, 1816. After the conveyance from Dana to the complainants, W. & T. Maxwell, the two sons of Guy Maxwell, made an arrangement with Avery, the other defendant in this cause, to assist them in buying the bond and mortgage and judgment against G. Maxwell and V. Matthews. They accordingly purchased them in June, 1820, for $1066,87, the amount alleged to be due thereon including costs. Matthews consented that the sheriff might proceed upon the original execution, notwithstanding the injunction. And the sheriff, under the direction of these defendants as the owners of the judgment, proceeded to sell the Wynkoop farm under the execution which was placed in his hands in 1812. The farm was bid in by Avery, for the joint benefit of the defendants, at $800, on the 11th of December, 1820, and the sheriff executed a certificate of such purchase, as required by the statute.

It is evident from this view of the facts in this case, admitting the deed of November, 1809, from G. Maxwell to Wynkoop is to be considered a valid conveyance as of that date, that it would be contrary to the settled principles of equity to allow the whole balance due on the De Witt judgment to be collected out of the Wynkoop farm, now the property of the

complainants. The property mortgaged was the primary fund for the payment of this debt; and that must be first resorted to unless the holders of that property have acquired some equitable claim to throw the burthen upon other lands bound by the judgment. From the evidence, it appears that Matthews had paid his full share of the mortgage money previous to the recovery of this judgment. The present owners of his share of the property have therefore an equitable right to insist that the balance of the mortgage debt shall be collected out of the property which belonged to G. Maxwell in the division between him and Matthews; and if any parts of that property had been sold and conveyed by G. Maxwell previous to that time, the present owners of such parts have an equitable claim to have the debt paid out of that which remained unsold. If that part of the mortgaged premises which belonged to G. Maxwell, and which remained unsold at the time of the judgment, is insufficient to satisfy the debt, other lands of G. Maxwell, on which the judgment was a lien, should next be resorted to, in the inverse order of their alienation. (5 *John. Ch. Rep.* 235. 1 *Paige*, 228.) It follows, from the application of this principle, if the conveyance of November, 1809, is valid, that Wynkoop and those claiming under him would be entitled to have the one half of the seven acre lot, and the whole of the 40 acre lot now in the hands of W. Maxwell, first applied to satisfy this judgment, before any resort could be had to the Wynkoop farm. As W. Maxwell and the other owners of this judgment were not bound to interfere with the sheriff's decision in the settlement of the equities between third persons, they should not have been held responsible for any mistake of the sheriff as to those equities in the order in which he sold the lands, if they had not attempted to control his decision, and had left him at liberty to exercise his own judgment as to the mode of proceeding to collect the residue which remained due on the execution.

I think, however, this case must be disposed of on a different principle, owing to the peculiar situation of the title to the Wynkoop farm at the time this judgment was recovered, and at the death of G. Maxwell.

· I lay out of question the fact that the sheriff's deed to G. Maxwell was never recorded. For if that forms any valid defence to these complainants against the lien of the De Witt judgment, it is a defence of which they may hereafter avail themselves at law. At the time Amasa Dana purchased in the property and took his conveyance from the sheriff, Wynkoop was in possession, and was the ostensible owner of the land, claiming it as his own. The lien of the Gold judgments, therefore, attached upon that possession. And if Dana had neither legal or constructive notice that Wynkoop's title had ever been divested, the unrecorded sheriff's deed to G. Maxwell was void as to him. Dana's grantees can therefore avail themselves of that want of notice, as a legal defence against any person who is obliged to make title to the farm through that unregistered deed. (6 *Wend. Rep.* 225.) There is nothing in the pleadings or proofs in this case to show whether Dana was or was not a bona fide purchaser, without notice of the sheriff's deed to Guy Maxwell. Neither is there any thing to show whether either Dana or the complainants have been misled by the delivery to Wynkoop, of the deed of November, 1809 ; or by the proof of the due execution thereof, which was endorsed upon that deed in 1816. I have then nothing before me which will enable me to decide upon the legal or equitable rights of the parties in that respect. I must therefore examine the case as if the sheriff's deed of 1806, had been duly recorded, or was known to Dana and to the complainants at the time of their respective purchases.

Although the legal title may have been vested in G. Maxwell, by the sale under the M'Bride execution, it is satisfactorily established that he took that title merely as a security for the payment of the amount of his advances, &c. ; and *that he held it in trust*, to be re-conveyed to Wynkoop whenever the latter should pay what was justly· due. If the deed of November, 1809, was absolutely void, and was incapable of confirmation by the heirs of G. Maxwell after his death, those heirs took the legal title to the land subject to that trust ; and they were bound to convey it whenever the amount due was paid or satisfied. Whatever doubts may have once existed on this subject, it is now settled that a judgment being

merely a general lien on the land of the debtor, the lien is subject to every equity which existed against the land in the hands of the judgment debtor at the time of the docketing of the judgment. And the court of chancery will protect the equitable rights of third persons against the legal lien, and will limit that lien to the actual interest which the judgment debtor has in the estate. (*See* 1 *Atk. on Conv.* 512, *and* 1 *Paige's R.* 128, *and the cases there referred to.*)(*a*) If the statement as made by T. Maxwell and Wynkoop at the time of their settlement was correct, very little was due to G. Maxwell on account of the Wynkoop farm at the time this judgment was docketed, in July, 1809. And to that extent only, in any event, have the owners of the judgment a right to enforce the collection thereof against this farm. It also appears from the statement, that some payments were made afterwards. And if the two pieces of land held by W. Maxwell, were, at the time of the purchase of this judgment, in June, 1820, worth enough to satisfy the whole amount due thereon, then there is no equitable lien upon the farm for any thing more than the balance due from Wynkoop at the time of the docketing of the judgment under which W. Maxwell derived title to those two pieces of land. The amount due, as stated in the written declaration delivered to Matthews, with the deed, was $1000. But that amount was inserted in the absence of Wynkoop, and without any actual estimate of the real amount due. From an inspection of this paper, in connection with the other evidence in this cause, I am satisfied $1000 was inserted in the blank, merely as a nominal sum ; and that the true sum was to be liquidated between the parties afterwards. The real object of that transaction was to place the title to the property in such a situation as to enable G. Maxwell to transfer it to Wynkoop unembarrassed by judgments which might be rendered against the former for his own debts.

The settlement between Wynkoop and T. Maxwell, and the delivery of the deed was binding on the latter as one of the heirs at law on whom the legal title had descended. And if he was the only party interested in the judgment at this time, I should have no difficulty in disposing of this case up-

(*a*) See also *Oxwith* v. *Plumer*, *Gilbert's Eq. Rep.* 13.

on the evidence now before me. It appears, however, that W. Maxwell, and J. H. Avery, have equal interests with him; and as the parties have not, under these pleadings and proofs, sufficiently ascertained the real situation of the indebtedness at the time that judgment was rendered, I shall direct a reference to the taxing master of the sixth circuit to take an account of the amount, if any, which was due to G. Maxwell from Wynkoop, on the 12th of July, 1809, the day of the docketing that judgment, for the monies advanced or liabilities assumed on the purchase of the M'Bride judgment, and for all costs, charges and expenses which G. Maxwell had been obliged to pay, for or on account thereof, and for or on account of any other legal or equitable demand against Wynkoop. I shall also direct, that in taking such account, the master allow all payments and just off sets, and allow interest as shall be equitable; that, after having ascertained the amount which was equitably due to G. Maxwell at the time, he compute the interest on the balance thus ascertained, down to the date of his report. The master is in like manner to ascertain what was due to G. Maxwell from Wynkoop at the time of docketing the judgment, under which W. Maxwell has derived title to the 40 acre lot, and the half of the 7 acre lot; and to cast interest on the amount thus due, in like manner. The master is also to ascertain and report the value of the 40 acre lot, and of the half of the 7 acre lot, at the time of the purchase of the judgment, in June, 1820. The master is also to have the usual power to examine the parties on oath, and to compel the production of books and papers. He may also examine any witnesses as to the subject matter of the reference, whether they have been already examined in chief or otherwise. And all further questions and directions are to be reserved until the coming in of the master's report.