# Thomas G. McIntyre *v.* Agricultural Bank *et al.*

The interest of a grantor in a deed of trust is not analogous to the interest of a mortgagor, and is not the subject of lien or execution at law.

The interest of a *cestui que trust* in real estate, cannot be sold on an execution at law, unless where the trustee holds the title, as a naked simple trust, and the whole beneficial interest is in the *cestui que trust.*

A court of chancery will keep an incumbrance alive, or consider it extinguished, as may bestsuit the purposes of justice and the honest intent of the parties to the same.

Where a third party purchased an estate incumbered by a deed of trust, and for the purpose of perfecting his title paid the money, to secure which the deed of trust was executed, and had satisfaction entered upon the face of the deed of trust; held by the court, that although the strict legal effect of this was to clothe the grantor in the deed of trust with the naked legal title, yet this was not such an interest as could be covered by a judgment at law, obtained against the grantor in the deed after the execution of the same. If necessary to the protection of the party raising the incumbrance, the court would further hold, that the legal title still remained in the trustee, for the benefit of the party raising the incumbrance.

The bill in this case states, that in January, 1839, Thomas G. McIntyre contracted with John Grissom for the purchase of him of a tract of land and a plantation, in the county of Claiborne. That in October, 1836, Grissom had conveyed the property in trust to Passmore Hoops, to secure the payment of a large debt owed by Grissom to one Miles Luster, which debt was still unpaid. Luster had transferred his interest in said deed of trust to Wilson F. Dillon, on the 6th day of January, 1839. McIntyre contracted with Grissom, Dillon and Hoops to execute his two promissory notes to Dillon, with two good sureties, for the gross amount of $12,500, payable on the 1st days of January, 1840 and 1841, upon condition that Dillon would release the land from the deed of trust. The notes were made and delivered to Dillon on the 10th day of January, 1839. Hoops, the trustee, made the following entry on the face of the deed of trust:

"This deed of trust has been paid and satisfied so far as the lands mentioned herein are subject to said deed, by Thomas G. McIntyre; and I hereby authorize the clerk of the probate court to record this memorandum on the margin of the record, and hereby acknowledge satisfaction in full as to the land mentioned herein, and do release the land from the conditions herein mentioned.

PASSMORE HOOPS, <em>Trustee.</em>"

*January* 6, 1839.

On the 10th of January, 1839, Grissom made a deed of the land to McIntyre, which was recorded.

After the deed of trust had been executed, to wit, on the 8th of December, 1837, the Agricultural Bank obtained judgment against Grissom for the sum of $4,338 58, and on the 8th of January, 1840, they levied an execution on the land covered by this deed of trust, and advertised the same for sale. McIntyre filed his bill charging the above facts, praying to be substituted to the rights of Luster and Dillon, and that they be decreed to execute a release of all their claim to said land to McIntyre; and that in the mean time the Agricultural Bank be restrained from selling the land under their execution.

The injunction was granted by C. C. Cage, one of the judges of the circuit court. The Agricultural Bank demurred to the bill, and the demurrer was argued at December term, 1842.

MONTGOMERY and BOYD for complainant.

The case made by the bill is in substance, that McIntyre purchased from Grissom a tract of land which was subject to a deed of trust, to secure a debt originally due to Luster, and assigned to Dillon; and it was agreed between all the parties—Grissom, McIntyre, Dillon, Luster and Hoops—that McIntyre should pay a certain sum, ($12,500,) and that the deed of trust, so far as the land was liable, should be released; which agreement was completed, as charged in the bill, on the 10th January, 1839, at which time the notes were given, and the deeds acknowledged. An informal release was made by Hoops, the trustee, dated 6th January, 1839, which is expressed to be in consideration of a payment made by McIntyre. At this time there was an unsatisfied judg-

ment against Grissom, in favor of the bank, which was a lien on Grissom's estate in the land. But it does not appear that the existence of this judgment was known to the parties, particularly McIntyre.

This bill is demurred to, and must therefore be treated as true. It is, in its nature and effect, a bill to foreclose a deed of trust, which from the nature of the release upon its face, cannot be foreclosed without the interposition of this court. If the release had not been entered of record, there would have been no legal impediment to a sale by the trustee, which would of itself have been a foreclosure of the equity of redemption; but the trustee having executed a general release, could not act in the matter without a correction of that defect in his title by general consent of all parties interested, or the interposition of a court of equity.

Courts of equity regard the substance of transactions and not the form, and will in general consider all that relates to one transaction as having entered into the consideration of the parties and been consummated at the same time, without reference to the order of time in which each fact occurred, unless order of time constitute the essence of the transaction, which very rarely occurs. It cannot therefore make any difference in the decision of this case, that release of the deed of trust by Hoops was dated a few days previous to the deed from Grissom. The date was not material; the delivery was the essence of the transaction, and that appears to have been a simultaneous act in effect, if not in fact.

The real object and intention of the parties was, that McIntyre should have an unincumbered title to the land, so far, at least, as the parties interested in the deed of trust were concerned, and cannot be presumed to have been intended to relieve Grissom's estate in it from the incumbrance. And no rule is better settled than that where a person having an estate in land subject to incumbrances, pays off and discharges such incumbrances for the protection of his estate, that equity will, for his protection, substitute him to the rights of the incumbrancer, although he take a release instead of an assignment. And for the protection of a *bona fide* purchaser, an outstanding lien which has been satisfied will be sustained in equity. 1 Powell on Mort. 314–15; 2 J. C. R. 503; 7 Dana 66.

Although the doctrine of tacking has been denied by our courts, it has been decided, that where a mortgagee was compelled for his own security to satisfy a prior judgment, which was a lien on the property, he was entitled to payment of the judgment as well as mortgage out of the fund. 4 J. C. R. 37.

Deeds of trust have been recognized, by our courts as well as those of England, as the same kind of security as mortgages, and subject to the same rules. 1 Powell on Mort. 13; 2 Howard 896.

The position assumed by defendants, that the bank has a legal estate by the levy of execution on the equity of redemption, is not tenable. A judgment is but a lien at best. Before levy it is a general lien on all the land of the debtor; after levy it is a specific lien on the property seized, and equity has jurisdiction at any time to settle the rights of persons claiming conflicting, concurrent or successive liens. And the elder incumbrancer may file a bill to foreclose—or, which is now the universal practice, to procure a sale of the incumbered property, and an appropriation of the fund; and will do so although the parties are in no danger of disturbance or injury. The purchaser of an equity of redemption can at any time file a bill to redeem, and if he be also an incumbrancer, he can claim the benefit of such incumbrance in his bill. The purchaser of an equity of redemption is not bound to pay the debts which are charged on the land, but holds his estate in the land subject to such incumbrance, and would be liable to be foreclosed, but would only be compelled to render up the property to be sold for the benefit of the incumbrancer.

The further position assumed, that McIntyre purchased with full knowledge of the lien of the bank, is not sustained by the pleadings. The bill admits the existence of the judgment, and that it constituted a lien on the property, but does not admit that it was known by McIntyre. And such inference cannot be drawn from any fact stated in the bill. A judgment is a lien by positive law, and is not affected by notice. It is necessary that purchasers should have notice of judgments to affect them with the consequences. It is not presumption of notice; and if it could avail, the defendant in this case should have relied on it in his answer.

It is true that a sale under the execution would only vest the

equity of redemption in the purchaser; but the consequences are not truly stated by defendant's counsel. The purchaser of the equity of redemption would have been entitled to possession, and McIntyre would have been left to his bill of foreclosure, in which he would have been met by this informal release of Hooper, to avoid the consequence of which he would have had to prove notice of all the material allegations of his present bill. The avoiding this unpleasant and critical dilemma is sufficient ground for coming into court before a sale under the execution, to settle the rights of incumbrancers, and to have a conversion of the incumbered property into money for the purpose of distribution among the incumbrancers.

The objection that all the parties in interest are not made parties to the record, is not sustained. Although there were other incumbrances included in the deed of trust, it does not appear that those incumbrances are still in existence; and until it so appears, it is not necessary to make the incumbrancers parties. But even if it were necessary, who has an interest that is not a party?

If the bank desires that the whole trust fund shall be marshalled, it can be obtained by a cross bill; certainly the complainant had no right to claim such advantage, for he was not entitled to any benefit beyond the fund involved in this case. But the bank has an interest in the whole trust fund, and would be entitled to a conversion of the whole into money, and an application of the surplus to the judgment. McIntyre has no such right, and should not have made those interested in that fund parties.

MANDEVILLE for defendant.

The CHANCELLOR.

If the receipt of the trustee does not discharge the land from the trust, I should then consider the case as free from all difficulty. The interest of a grantor in a deed of trust is not analagous to the interest of a mortgagor, and is not the subject of lien or execution at law. Here was an absolute conveyance in trust for the payment of debts. It bears no analogy to a mortgage. See 1 Pow. on Mort. p. 10, note. The grantor has but a *contingent, reversionary* interest. The trustee holds the land in trust, first for the payment

of the specified debts, and secondly for the benefit of the grantor, if any thing should be left after the payment of the debts. See Denn v. Dodds, 1 Johns. Cas. 160. This is not such a trust interest in the grantor, as is the subject of levy and sale at common law; a judgment at law is not a lien upon a mere equitable interest in land. 1 John. Ch. Rep. 52; 17 Johns. Rep. 350. The interest of the *cestui que trust* in real estate cannot be sold on an execution at law, unless where the trustee holds the title as a naked simple trust, and the whole beneficial interest is in the *cestui que trust.* Ontario Bank v. Root, 3 Paige, 478 ; Bogert v. Perry, 1 John. Ch. Rep. 52; 17 John. Rep. 350.

It may be well questioned, whether the writing of the trustee, indorsed on the deed of trust, operated to release the legal title of the trustee; it certainly does not amount to a technical release, not being under seal, and if it had that effect, it was by virtue of the receipt, expressed on the face of the writing. But suppose it did, still the release was evidently intended for the benefit of McIntyre, the money being paid by him, and he, having contracted for the interest of Grissom; and although the effect of it was to vest the legal title formally in Grissom, yet a court of equity looking to the true intent and object of the release, will regard Grissom as the mere instrument or conduit through whom the legal title was to pass from the trustee to McIntyre.

The consideration which laid the land open to the execution of the bank was paid by the complainant in good faith, with a view to perfect his own title, and to permit the bank to seize upon the mistake or accident, by which the legal title was momentarily vested in Grissom, and thus appropriate the money paid by the complainant to its own use, would be a perversion of the plainest principles of justice. It is obvious that the payment by McIntyre to the trustee, and his receipt and release, were both done and intended for no other purpose than that of consummating McIntyre's contract of purchase from Grissom; and although the strict legal effect of the [receipt or release may have operated to clothe Grissom for the time with the naked legal title, yet this was not such an interest as could be covered by the judgment of the bank; because the payment of the money, by which the legal title reverted back to Grissom, was made by McIntyre, which

would, upon well settled principles of equity, create a resulting trust in his favor to that title, which a court of equity would promptly enforce. A court of equity will protect the equitable rights of third persons against the legal lien of a judgment, and will limit such lien to the actual interest which the judgment debtor has in the estate. Kiersted *v.* Avery, 4 Paige, 9. In the case of Hamilton *v.* Smith, (2 Moll. Rep. 482,) it was held that a judgment against a person having a mere equitable title to land, does not bind the land in the hands of a third person subsequently getting the legal estate, though the holder of the judgment was a party in conveying the legal estate.

The statute of this state subjecting the interest of a *cestui que trust* in lands to execution, is a copy, as far as it goes, of the statute of 29 Char. 2, which has uniformly received from the English courts the construction I have laid down.

I have no difficulty in declaring, that if it should be necessary to the protection of the complainant, against the judgment of the bank, I should hold the legal title to the land in question as still remaining in the trustee, for the benefit of the complainant. A court of chancery will keep an incumbrance alive, or consider it extinguished, as may best suit the purposes of justice, and the honest intent of the parties. Star *v.* Ellis, 5 John. Ch. Rep. 393, and the authorities there cited. I am accordingly of opinion that the demurrer of the bank must be disallowed, and an answer filed within sixty days.