TALLMAN *vs.* FARLEY and others.

Where mortgaged premises are sold under a prior mortgage, and there is a surplus arising from the sale, which is brought into court, such surplus belongs to the mortgagees in a second mortgage, rather than to judgment creditors of the mortgagor; although their judgments are prior in date to the second mortgage.

Judgment creditors are entitled only to such rights in the real estate of the debtor as the debtor rightfully possesses. They can take all that belongs to the debtor, and nothing more.

IN EQUITY. The plaintiff was the owner of two lots of ground in the city of New-York, which he agreed to sell to the defendant Farley for $2400 each. Farley entered into the negotiation for the purpose of building on the lots, but was unable to make any payment toward the consideration of the lots. It was thereupon agreed between Tallman, Farley, and Gerardus Clark, that Clark should advance to Farley $5000 on each lot, to enable him to erect the buildings on them; that the deed from Tallman to Farley should not be delivered until sufficient money had been advanced by Clark, and expended by Farley on the buildings, to render the premises adequate security for the consideration money. And that then the consideration money should be secured by a mortgage on the lots, and the $10,000 to be advanced by Clark should be secured by a second mortgage. Farley, in pursuance of this arrangement, took possession of the lots and began the erection of the buildings. In

Tallman *v.* Farley.

due time the deed from Tallman which had been left in escrow was delivered to Farley. At the same time he executed and delivered a mortgage to Tallman for the consideration money, and two mortgages for the $10,000 to be advanced by Clark; one to Nicholas De Alfaro on one of the lots, for the $5000 to be expended on the building on that lot, and another to Laurent Salles, for a like amount, on the other lot, to be expended for a like purpose. Farley, after the expenditure of the $5000 on each lot, was unable to finish the buildings, but conveyed the lots to Clark, who completed the buildings by an expenditure of about $5000 beyond the amount of the mortgages to Salles and De Alfaro. Tallman's mortgage not being paid, the bill was filed, in this suit, to foreclose it, and a decree for foreclosure and sale obtained. On the sale the property produced a surplus of about $5000 over and above Tallman's mortgage. Salles and De Alfaro filed their claims to such surplus, under their mortgages. Sidney V. Smith, Frederick Coe, and others, interposed claims to the surplus by virtue of sundry judgments which they held against Farley, and which had been obtained and docketed in the county of New-York, at different periods, but all prior to the deed from Tallman to Farley, and prior, of course, to the mortgages to Salles and De Alfaro. The master, on a reference, reported that the mortgages to Salles and De Alfaro were the prior liens on the surplus. And the case now came on to be heard on exceptions taken by the judgment creditors to his report.

*G. Clark*, for the mortgagees, made the following points.

I. De Alfaro and Salles have a stronger equitable claim to this surplus than any other claimant, and must be preferred. And although as a general rule, if there be several equitable interests affecting the same estate, they will attach according to the respective periods at which they commenced, yet this general rule admits of exception, if any one of the parties hath more equity than the others; for he that hath the more equity shall be preferred. (1 *Powell on Mort.* 379. 2 *Ch. Ca.* 213. 2 *Ves. sen.* 486.) 1. Judgments being *general* liens only, are lia-

Tallman *v.* Farley.

ble to be displaced in a court of equity, and made subordinate to other claims of *greater* equity. (*Kiersted* v. *Avery*, 4 *Paige*, 15. *Morris* v. *Mowatt*, 9 *Id.* 586, 590. *White* v. *Carpenter*, *Id.* 266. *In re Howe*, 1 *Id.* 128. *See also* 1 *John. Ch.* 406.) 2. Judgments at law are never considered, in courts of equity, as of the same rank, as to lien, as mortgages; because although they are liens, they do not specifically charge lands, whereas mortgages do. (4 *Kent's Com.* 151, 154. 1 *Powell*, 435.) 3. Judgment creditors coming into a court of equity to enforce their rights, are subject to the rule of equity that he who will have equity must do equity: and hence it is well settled that if a judgment creditor comes into a court of equity to redeem against a purchaser who has made improvements without notice of the judgment, he must pay for the improvements. (*Benedict* v. *Gilman*, 4 *Paige*, 62. 2 *Ch. Cas.* 164. 5 *Bac. Ab.* 80, 82, *tit. Mortgage.* 2 *Ch. Pr.* 361.) And a mortgagee, for all purposes of this kind, is considered a purchaser, (10 *Paige*, 437,) and the record of the judgment is not a sufficient notice. (1 *Powell*, 496, 497. 1 *Com. Dig. tit. Mortgage*, 4 A. 4. *Pr. Cas. in Ch.* 37. *Atkinson on Titles*, 581. 4 *Paige*, 62.) 4. It is a rule also in equity, that where a man is a purchaser without notice, he shall not be annoyed in equity, not only where he has the legal estate, but where he has a better title to call for the legal estate. (1 *Powell on Mort.* 397. 2 *Vern.* 599, 600.) 5. If an incumbrancer lies by, and sees that a second incumbrancer is lending his money on the same security, and does not inform him of it, he will lose his priority. (1 *Powell*, 366. 5 *Bac. Abr. tit. Mort.* 51.)

II. But there was an equitable mortgage in favor of the mortgagees, prior in time, to the judgment's attaching. 1. The purchase of the two lots in question from Tallman, and the giving of the deed by him was coupled with the condition that Farley (the purchaser) was to give a mortgage for the whole purchase money, and that he should raise the money to build on the lots by giving a second mortgage or mortgages to the present mortgagees, (or to Clark as their agent,) who were to advance the money to build with. And Tallman states ex-

pressly that but for that agreement he would not have delivered the deed. It was all one transaction. 2. The property therefore came to Farley (if it came to him at all) subject to the above mentioned agreement to give Clark or his clients mortgages for the advances he should make, and which agreement was prior to the judgments' attaching, and the deed was delivered by Tallman to Clark pursuant to such arrangement. 3. Such an agreement is equivalent to an actual mortgage, and the land was therefore subject to this equity when the judgments attached. (*In Re Howe,* 1 *Paige,* 125, 128.) 4. The deposit of the title deeds with Clark constituted an equitable mortgage in favor of those he represents. (4 *Kent's Com.* 151, 154. 17 *Ves.* 230. 12 *Id.* 401. 2 *Sandf.* 9, 10.) 5 It is a rule in equity that where several persons have equal equity, he amongst them that hath possession of the legal estate, or the title deeds, shall be preferred although subsequent in point of time. (1 *Powell on Mort.* 381. 3 *P. Wms.* 280.) And in the latter case, a second mortgage was preferred to a former, because a mortgagee had possession of the title deeds. 6. But where the parties have not equal equity, those that have the greatest equity shall be relieved against the legal estate. (1 *Powell on Mort.* 438.)

III. The mortgages in the present case are equivalent to mortgages for the purchase money, which always had a preference, even before the statutory provision on the subject. (1 *Bro. C. C.* 424. *Amb.* 724. 3 *Atk.* 272. 1 *Vern.* 267. 2 *Ves.* 622. *Fonbl. Eq.* 381. 4 *Kent's Com.* 152.)

IV. Farley (the judgment debtor) never had any interest in the premises on which the judgment could attach. He never paid any thing. And a court of equity will protect the equitable rights of third persons against the legal lien, and will limit that lien to the actual interest which the judgment debtor has in the estate. (*Kiersted* v. *Avery,* 4 *Paige,* 15. *Matter of Howe,* 1 *Id.* 128. *White* v. *Carpenter.* 2 *Id.* 266. *Atk. on Conv.* 172. *Gilb. Eq. Rep.* 13.)

V. Farley, so far as he became possessed of the property, was a mere trustee for the mortgagees, until the money advanced for the buildings should be paid. (*Garson* v. *Green,* 1 *John.*

*Tallman v. Farley.*

*Ch. R.* 308.) And the judgments were no liens as against the cestuis que trust. (1 *John. Ch. Rep.* 52.)

*G. M. Ogden* made the following points for the judgment creditors. I. The lien of the judgments of the defendant is superior to the lien of the second mortgages, and is the first and prior lien upon the whole of the surplus for the payment of the amount thereof, and interest thereon from and after the 21st day of February, 1846; because 1. The mortgage from Farley to the defendant Salles in fact was not delivered until some time after the delivery of the deed from George F. Tallman to Farley. 2. The delivery of the deed and the delivery of the mortgage could not have been so simultaneous as to shut out the lien of the judgments. 3. The lien of the judgments attached *eo instanti* that the title became vested in Farley.

II. The court will decree the payment of the judgments according to their legal priority; unless the defendants Salles and De Alfaro have greater equities, prior in point of time. III. There was no agreement between the second mortgagees, the complainant and Farley, by the operation of which the former was to have a lien superior to that of the said judgments: and the court will enforce the agreements of parties, but will not make agreements for them. IV. If the mortgages to the defendant Salles and De Alfaro are the prior lien upon the said surplus moneys to any extent or for any sum of money, they are such lien only for the sum or sums of money which had been, previously to the delivery of such mortgage, advanced by the defendants Salles and De Alfaro to Farley, on the faith of the contemplated security of such mortgage, or for such sums so previously advanced, and in addition for such sum or sums of money, if any, as were advanced on the faith of the security of such mortgages at the time of the delivery thereof.

EDMONDS, J. The judgment creditors come into this court to enforce the legal lien of their several judgments, and they claim that they are entitled to be first paid, because they are

Tallman *v.* Farley.

prior in point of time to the mortgages. It is not pretended that those creditors have made any advances, or incurred any liabilities, on the strength of the mortgaged premises; or that any agreement has ever been made between them and Farley, by which they were to have a specific lien on them. But they claim under the legal right growing out of the general lien of their judgments.

These judgment creditors are not in equity regarded as bona fide purchasers, and entitled to the consideration which equity gives them, when they become such without notice, for a valuable consideration actually paid; but they are looked upon simply as proceeding *in invitum*, to enforce their legal demands, and are not entitled to the same favor as a purchaser, whose right may be enforced through the conscience of the other party. (2 *Story's Eq.* 1502. *Langton* v. *Horton*, 1 *Hare*, 547. *Skeeles* v. *Shearly*, 3 *Myl. & Cr.* 112. *Story's Eq. Pl.* § 807, *a.*) Mortgagees however, who have advanced money on the credit of the land, are considered as bona fide purchasers. (*In Re Howe*, 1 *Paige*, 128.) Judgment creditors are entitled only to such rights in the premises as the judgment debtor rightfully possessed. (2 *Story's Eq.* § 1503, *b*. *Whitworth* v. *Gaugain*, 3 *Hare's R.* 416.) They can take all that belonged to the debtor, and nothing more. (*Langton* v. *Horton*, 1 *Hare's R.* 547. *Kiersted* v. *Avery*, 4 *Paige*, 15. *Morris* v. *Mowatt*, 2 *Id.* 590.) This principle is well established in equity jurisprudence. It is of frequent application in cases of trusts, and is entirely decisive of this case. For it cannot be pretended that the judgment debtor ever had any right to the premises, independent of the equitable rights of the second mortgagees. His title was taken in subordination to their claim, and the very value, out of which the surplus in question flowed, was produced solely by the money thus advanced to him. If the judgment creditors could find a moment of time in which their debtor had a right to sell or incumber the premises, in preference to the claim of the second mortgagees, they might perhaps find some aliment on which their legal claim might be fed. But no such time can be found: and as their debtor never had

a right to alienate or incumber the premises to the exclusion of the second mortgagees, and as these judgment creditors can take only such right as their debtor had, they have no right in equity to the preference they now set up.

The master's report must be confirmed, with costs to be taxed.

---

SAME TERM.   *Before the same Justice.*