## JEFFERSON NAILOR et ux. *v.* ALVARY FISK.

Where F. filed a bill to have satisfaction of his vendor's lien for the unpaid purchase-money for a tract of land sold and conveyed by him to N. in the year 1838, and for which no personal or other security was given; and it appeared that the wife of N. had in 1841 purchased the land at sheriff sale with her own separate means, under an execution issued upon a judgment against her husband (N.), rendered in 1839, and that the purchaser had notice that purchase-money was due to the vendor and unpaid at the time of her purchase; she also purchased the land for the taxes, but that title is not relied on:—*Held*, that the purchaser cannot claim protection under her purchase at the sheriff's sale.

A purchaser who has notice of an outstanding equity, can make no pretence that he acquires a title discharged of that equity.

ON appeal from the superior court of chancery; Hon. Stephen Cocke, chancellor.

The facts are contained in the opinion of the court and the brief of appellee's counsel.

*Geo. S. Yerger* for appellants.

Nailor purchased of Fisk the undivided moiety of the land in contest, he (Nailor) owning the other half. Fisk made title to Nailor, and Nailor gave his note. Nailor's wife owned property separate from her husband. A judgment was obtained against Nailor, after his purchase aforesaid, on which an execution issued in 1842 or 1843, and this land was levied on as Nailor's. The sheriff sold the land under this execution, and Mrs. Nailor became the purchaser and paid for it out of her own funds, as the case shows, more particularly her answer to the special interrogatory put to her by complainant. She claims the land under this purchase.

1. I suppose the question does not need argument, that a woman, with her own funds, may bid, as well as any third person, for property levied on as her husband's. Having the right to purchase, no law prevents her from bidding.

2. The only question, then, is, whether a vendor's lien, which is a mere charge in the hands of the original parties, follows

Nailor et ux. *v.* Fisk.

the land in the hands of a purchaser under execution; or, in other words, whether the lien shall prevail over the judgment. That it will not, see 1 Dev. & Bat. Eq. 32, 35; Ib. 379; *Wragg* v. *Comptroller-General,* 2 Dessaus. 509; *Gann* v. *Chesley,* 5 Yerg. 205; *Roberts* v. *Rose,* 2 Humph. 147.

3. The case of *Dunlap* v. *Burnet* is no decision on this point. It is mere dicta of the judge. The point is not decided. 5 S. & M. 708. Nor are the cases reported in 7 S. & M. 15, 630, 657.

4. The lien in fact is merely personal between the parties. It is implied. There being no writing, it is merely implied. It does not attach to the land, hence its assignment is a nullity, and the assignment of the debt does not pass it. 6 How. 362, 529; 3 Yerg. 27.

5. Suppose the note is assigned, and then a judgment, will not the judgment prevail? But suppose the debt is retransferred, the vendor has all his original rights. Can he enforce it against judgment? The principle of the lien does not apply to judgment creditors. *Mackreth* v. *Symmons,* 15 Vesey, 340.

6. But again; the bill does not charge, nor does the answer admit notice to the creditor. In such case it must be proved. 1 Dev. & Bat. Eq. R. 333.

*T. A. Marshall* for appellee.

It cannot be denied that a vendor has a lien upon the land sold for the purchase-money, if he takes no other security therefor, while it remains in the hands of the vendee, or a sub-vendee with notice. *Stewart* v. *Ives,* 1 S. & M. 197; *Carnes* v. *Hubbard,* 2 Ib. 108.

It has also been fully settled, both by this court and the high court of errors and appeals, that a sale by a sheriff under execution, passes only such title as the defendant in execution had. *Jenkins* v. *Bodley,* 1 S. & M. Ch. R. 338; *Mallory* v. *Wiggins,* (I believe is the style of the case,) decided at the present term of this court; *Money* v. *Dorsey,* 7 S. & M. 15; *Delafield* v. *Anderson,* Ib. 630; *Ellis* v. *Ward,* Ib. 651; *Dunlap* v. *Burnett,* 5 Ib. 702. In *Mallory* v. *Wiggins,* and *Dunlap* v. *Burnett,* it was expressly decided, that a purchaser at execution sale against a

vendee acquires and holds the land subject to the vendor's lien for the purchase-money. It follows, therefore, that Mrs. Nailor, by her purchase under the execution in favor of Baker, Johnson & Co., admitting that she purchased with her own funds, was only substituted to the interest of her husband, and occupies no higher or better position than he occupied. She acquired only his title, that is, the fee-simple subject to complainant's lien for the purchase-money due by her husband, which she admits she knew was unpaid. Does her tax purchase give her any better title ? I will not comment on the policy of permitting married women to buy at sheriffs' and tax collectors' sales the land and other property of her husband at probably one hundredth part of its real value, and thereby defeat the collection of the honest and just claims of his creditors. But I will say that such purchases should never be favored in courts of equity; they should be watched with jealousy; rigidly and strictly scrutinized, and in all cases set aside and declared void, where the least suspicion of fraud or any unfairness attaches to·them. In tax sales, however, the utmost strictness is always required. Unlike sheriffs' sales, no presumption whatever, prior to the act of 1843, Session Acts, 43, could be indulged in their favor. It is the exercise of a naked power, not coupled with any interest; and the party therefore claiming under such title, must show affirmatively that every prerequisite to authorize the sale has been strictly complied with. The assessment must be regular, the notices properly given, and the sale conducted in all respects according to law; and all must be affirmatively proved by the holder of the tax deed. This rule is without exception. See *Williams* v. *Peyton,* 4 Wheat. 77 ; *Thacher* v. *Powell,* 6 Ib. 119 ; *Litchfield* v. *Cudworth,* 15 Pick. 28 ; *Benton* v. *Bond,* 5 Day, 162 ; *Coe* v. *Stow,* 8 Conn. R. 538 ; *Allen* v. *Thayer,* 17 Mass. R. 299 ; and *Doe* v. *The Natchez Insurance Co.,* decided by our own high court, 8 S. & M. 197.

The assessment and sale under which Mrs. Nailor claims, were made under the act of 1841. See acts of 1841, p. 51. Has she shown affirmatively that all the requirements of that act have been strictly complied with ? The act requires assessors to "prepare an assessment roll, in which they shall set

down in separate columns the names of all the taxable inhabitants of the county, and each item of taxation, with the value thereof;" the "quality of the land, and the value per acre," must be given; the assessor is required to make out three fair copies of the assessment roll, one he shall deposit in the office of the county treasurer, one he shall deposit in the office of the auditor of public accounts, and the other he shall give to the tax collector. The board of police are then required to assemble at the court house, examine critically the assessment roll, and correct all mistakes therein; and the clerk of the board of police is then required to make out three copies of the roll when corrected, and transmit one to the auditor of public accounts, deliver one to the county treasurer, and the other to the tax collector. See sections 4, 5, 9, 14, and 15. Now, what evidence have we in this case that these various duties have been performed? None whatever, except such as can be drawn from the auditor's certificate, made exhibit No. 4 to Mrs. Nailor's answer; and that, I submit to the court, is not legal evidence for any purpose. What law authorizes such a certificate to be given in evidence in any case? It is not a copy of or extract from any public or other record in his office; his official duties require him to give no such certificates; and it is entitled to no more weight or respect than his written statement not under oath. Assuming, however, that it is legal evidence, what does it prove? It shows that neither the quality, description, or value per acre of the land was stated and set down in the assessment roll; the number of acres of land as shown by that certificate is 824, while the tax deed shows that the collector sold $824\frac{63}{100}$; it shows that the tax due the State by Jefferson Nailor was $10.30, while the deed states it to have been $10.80; and there is no evidence whatever that any county tax was ever assessed. The auditor's certificate mentions none, and it is not shown, or even stated, that any assessment roll was deposited with the county treasurer, or given to the tax collector.

It is certainly of vital importance that the assessment roll shall be in every particular correct; it is the only warrant or authority by or under which the collector can in any instance

either demand or distrain for taxes; and it affords the only check the auditor or county treasurer have on the collector, and consequently the only security the public have against his frauds or oppressions; hence the absolute necessity of the assessment roll being in all respects accurate. Without it, the collector cannot do any thing; and in all cases where he is not governed by it in collecting taxes, his acts are without authority and void. The small items of $\frac{63}{100}$ of an acre of land, and fifty cents overtax, in this view become important, and sufficient, especially in a case like this, to render the whole sale void. By what authority did the collector distrain and sell for the $10.80 alleged to be due the county of Warren? No evidence is produced here that any thing was due the county. The defendants should have produced a certified copy of or extract from the assessment roll deposited with the county treasurer, and proved by that that the tax was assessed, and the collector required or authorized to collect it; and the absence of such evidence also renders the sale void. The failure of the assessment roll to give the numbers, sections, or other description of the land, with its quality and value per acre, is likewise fatal to defendant's title.

The evidence to show that the tax collector complied with the requisitions of the law in distraining and selling the land is even more defective than that offered to show that the assessor performed his duty. Indeed, there is a total failure of evidence to show any authority of the collector to distrain or sell in almost every essential particular. Before any distress can be made for taxes, the tax collector is required to "call at least once on the person taxed, or on the agent or attorney of such person, or at his usual place of residence (if within the county), and leave, if he be absent, a written demand of payment of the taxes charged upon his or her person and property." See section 19, p. 60. Section 37, p. 67, provides, "that if any tax on land shall remain unpaid on the 1st day of February, in the year in which the same shall have been assessed, and no personal property can be found in the county from which to levy such tax, the collector shall proceed to sell," &c., proceeding to point out the manner in which the advertisement should be

made, or notice given; " which advertisement shall specify the time and place of sale, the name of the person as whose property it was taxed, the name of the person to whom it was granted, if known," &c. Same section, p. 68. Section 38 provides, that " in making such sales, the collector shall not sell in any one lot more than one eighth of a section," &c. And section 40 requires the collector to furnish the purchaser " with a copy of the advertisement, verified by the affidavit of the printer or editor of the paper in which it was made," &c. Now in this case we have no legal evidence that either of these duties was performed. And it was certainly incumbent, according to all the authorities, on Mrs. Nailor to show affirmatively that they were all performed, or her title must fail. There was no demand made of Jefferson Nailor, his agent or attorney, or by writing left at his usual place of abode (which was in Warren county), for the taxes charged upon him and his property. It has not been shown that he had no personal property from which to levy the tax on his land remaining unpaid on the 1st day of February. The advertisement does not specify the name of the person to whom the land was granted, nor that such name was unknown to the tax collector. It is not shown that the collector, in making the sale, did not offer, in any one lot, more than one eighth of a section. And I submit to the court whether the affidavit of the publisher of the newspaper in which the advertisement was made to prove notice is sufficient, the law having said it shall be verified by the affidavit of the printer or editor. The failure to prove either one of these essential prerequisites, I repeat, is fatal to the tax title, for until all had been fully complied with, the tax collector had no power to sell. But it may be contended that the recitals in the deed, a printed form provided beforehand to suit every case, are evidence to prove that the collector had fully performed his duty. They certainly show that he knew what his duty was, but they clearly cannot be received as evidence that he performed it. Suppose a sheriff were to recite in his deed to land sold by him under execution, that on a particular day a judgment was rendered in the circuit court of Hinds county in favor of A. against B. for $1,000; that an execution was issued on that judgment and came to his

hands as sheriff, and he levied and sold, &c.; it surely would not be contended that these recitals would be evidence of the recovery of the judgment and issuance of the execution. Or suppose an administrator were to recite in his deed to land that all the various notices were given, orders made, &c. to authorize a sale of the land of his intestate, manifestly such recitals would not be sufficient evidence to prove that the sale was legal and regular. The judgment and execution would have to be produced in the first case, and the record of the probate court in the second, so as to show that there was power or authority to make the sales. So in tax sales, every prerequisite or duty to be performed, before the sale can be made, must be clearly proved to have been done and performed by evidence independent of the deed. That such recitals in a tax collector's deed are not evidence, has been repeatedly decided, and seems to be an undisputed principle or rule of evidence. See *Jackson* v. *Esty,* 7 Wend. 149; *Jackson* v. *Shepard,* 7 Cow. 88 (in many respects similar to the case at bar); *Harlow* v. *Pike,* 3 Greenl. R. 440; *Inman* v. *Jackson,* 4 Ib. 248; *Michie* v. *Mullin's Lessee,* 5 Hayw. 90; *Smith* v. *Corcoran,* 7 La. R. 50; and *Nalle* v. *Fenwick,* 5 Randolph, R. 594, where numerous authorities are cited and fully examined. It is needless to multiply authorities on this point, for no case, it is believed, can be found holding a different doctrine. I conclude, therefore, that no evidence has been offered to show that the requisitions of the law have been complied with in this case, and the sale was consequently without authority and void. Such being the case, the land is manifestly subject to the lien of complainant, and I confidently ask this court to render a decree in accordance with the prayer of the bill.

Since the foregoing brief was written, the high court of errors and appeals, in the case of *Thomas Hardeman et al.* v. *James Cowan,* decided in March last, have determined that a married woman, under the circumstances of this case, cannot purchase her husband's property to the prejudice of her husband's creditors. That case fully settles the complainant's right to subject the land to his vendor's lien. See Opinion Book C. p. 528; 10 S. & M. 486.

A purchaser of land for a valuable consideration without notice, takes it free from any equitable lien in favor of the vendor for the purchase-money, but the law is otherwise as to judgment creditors. See *Aldridge* v. *Dunn*, 7 Blackford, R. 249. The judgment creditor or purchaser under execution is merely entitled to the same rights that the debtor had, as he comes in under and not through him, and upon no new consideration, like a purchaser. See Story's Eq. Jur. vol. 1, p. 439, note to § 410; 2 Ib. p. 962, § 1503, b. note 2.

Mr. Justice HANDY delivered the opinion of the court.

The appellee filed his bill in the superior court of chancery against the appellants, to have satisfaction of his vendor's lien for the unpaid purchase-money of a tract of land sold and conveyed by him to the appellant, Jefferson Nailor, in the year 1838, and for which no personal or other security was given. It appears that Mrs. Nailor, the wife of Jefferson Nailor, purchased the land by means of her own separate property, at sheriff's sale, under a judgment rendered against Jefferson Nailor in May, 1839, her purchase being in September, 1841, and that she had notice that the purchase-money was due to the appellee and unpaid at the time of her purchase. She claims protection under that purchase, and also under a sale made by the tax collector in July, 1842, the purchase-money being paid out of her own funds, and the purchase made for her sole and separate use.

The chancellor decreed the land subject to the lien, and ordered an account to be taken of the amount due, from which this appeal was taken.

The title derived from the tax collector's sale does not appear to be insisted on by the appellants, and in the manner in which it is presented in the record, it could not avail, as that sale was made before the passage of the act of 1843; and there is no evidence of the performance of those prerequisites that were essential to show a title under such a sale, before the passage of that act.

But the appellants insist that as the appellee had conveyed the land to Jefferson Nailor, it became subject to the judgment

Nailor et ux. *v.* Fisk.

under which it was sold, and that the purchaser acquired a title discharged of the vendor's lien.

So far as the right of the judgment creditor to subject land under such circumstances to sale, in satisfaction of his judgment, and to obtain a title free from the incumbrance is concerned, there is much conflict between courts of very high authority. The supreme courts of the United States and of North Carolina hold that the lien of the vendor is in the nature of a secret trust, which, although it be preferred to any other subsequent equal equity, unconnected with a legal advantage, or equitable advantage which gives a superior claim to the legal estate, will be postponed to a subsequent equal equity connected with such advantage. Per Chief Justice Marshall in *Bayley* v. *Greenleaf,* 7 Wheat. 46; *Johnson* v. *Cawthorn,* 1 Dev. & Bat. 32; *Harper* v. *Williams,* Ib. 379; 3 Leigh, 597. And it would seem to follow that the vendor's lien will not be sustained against the judgment lien, where the property is conveyed to the vendee.

On the contrary, it is held by courts of high character, that the judgment charges only the actual interest of the judgment debtor, and that the equitable rights of third persons will be protected against the lien of the judgment; that the rule of protection to a purchaser applies to a party who comes in through the vendee and not under him, to one who purchases from the vendee by contract, and not to one who succeeds to his title by operation of law or purchase at legal sale. *Kiested* v. *Avery,* 4 Paige, 14, 15; 1 Story's Eq. Jur. § 410, note; *Aldridge* v. *Dunn,* 7 Blackf. 249; 1 Paige, 125; and this view seems to have received the sanction of this court in *Dunlap* v. *Burnett,* 5 S. & M. 710; 7 Ib. 23.

It is unnecessary to decide in the present case what will be the rule of this court upon this point. Here it is fully admitted that the purchaser at sheriff's sale had notice that the vendor's lien upon the land was unsatisfied. And when the purchaser has notice of the outstanding equity, there can be no pretence that he acquires the title discharged of that equity. He succeeds to the position of the defendant in the execution, and the purchase is presumed to have been made subject to the ac-

knowledged and well-known charge, and the purchaser cannot complain that it is enforced against the property.

The decree is affirmed.