| 55 | 143 |
|-----|-----|
| 127a | 315 |

</div>

JAMES E. CRISFIELD, as Supervisor, etc., Respondent, *v.* JAMES S. MURDOCK, JOHN HYLAND and Others, Appellants; JAMES S. WADSWORTH, Respondent.

*Collector's bond — nature of the statutory lien on lands of the collector and his sureties created thereby — right of redemption under a foreclosure of such lien — one surety converting the tax money is primarily liable.*

The docketing of a bond of a town tax collector in the county clerk's office, pursuant to the provisions of chapter 10 of the Laws of 1885, does not create a lien which supersedes, or is prior to, the equities of third parties existing in the lands of the sureties thereto at the time the statutory lien is so created.

The lien created by such bond, is not in the nature of a mortgage lien, but is rather in the nature of a lien by judgment, and equitable interests in a specific piece of real estate are entitled to priority over this general statutory lien when it is created subsequent to the transaction with the owner of the land which gives to a party an equitable interest in the particular piece of land in question.

An arrangement between a tax collector and one of the sureties on his bond, as to the management and use to be made of the tax moneys, providing that they are to be deposited in a bank in which such surety is a stockholder and officer, and the refusal of such surety as an officer of the bank to obey the directions of the collector to pay the money over to the county treasurer, are sufficient to charge the surety with the misappropriation of the funds, and to make him primarily responsible on the bond as between himself and the collector and his co-surety.

Although the owner of premises, or subsequent lienors thereon, may not have the right of redemption from a foreclosure of the statutory lien created by the tax collector's bond, yet a court of equity possesses the power to direct that any sale made under such foreclosure be made subject to the right of the subsequent lienors to redeem therefrom in such mode and manner as may be indicated in the judgment.

APPEAL by certain of the defendants from a judgment entered, upon a decision rendered at the Livingston Special Term, in the office of the clerk of Livingston county October 29, 1888.

The plaintiff is the supervisor of the town of North Dansville, Livingston county, New York. The defendant James S. Murdock was the collector for the same town for the year 1886–87, and the defendants James Faulkner and Reuben Whitman were sureties on his bond, and on the 7th day of February, 1887, upon the petition of the plaintiff, as supervisor, the county treasurer of Livingston county extended the time for the collection of the unpaid taxes, and the collector, with his sureties, renewed their bond in pursuance of the provisions of chapter 10 of the Laws of 1885, which was docketed that day in the county clerk's office, as required by the said statute, and there was uncollected at that time the sum of $4,847.30. On the 9th day of July, 1887, the collector made return upon his warrant, and there was at that time collected and unpaid the sum of $2,180.10, which has never been paid to the county treasurer, and the collector is in default. At the time of docketing the bond James Faulkner was the owner in fee simple of several separate and distinct parcels of land located in the county of Livingston, and his co-surety Whitman was also the owner of lands within the said county upon which the said bond became a lien, and the collector was not the owner of any real estate. The moneys so collected was, by the collector, deposited with the First

National Bank of Dansville, James Faulkner being one of the shareholders, the president, cashier and chief manager. On the 24th day of August, 1887, the bank ceased to do business, and its assets passed into the hands of a receiver, and it and the said Faulkner and Murdock were insolvent.

On the 14th day of September, 1886, before the tax warrant was delivered to the collector, James Faulkner borrowed of the defendant, James W. Wadsworth, $10,000, and to secure the payment thereof executed and delivered to Wadswortha mortgage on two of the parcels of land then owned by him, which mortgage was not recorded until the 25th day of August, 1887, the day after the failure of the bank and of Faulkner. On and about the time of the failure of the said Faulkner and of the said bank, James Faulkner deeded one of the parcels of land owned by him to the defendant Hyland, and executed to him a mortgage upon other parcels of land, including the parcels mortgaged to Wadsworth, for the purpose of securing and paying a then existing indebtedness owing by him to Hyland, and as accommodation indorser for Faulkner.

By the judgment, the Wadsworth mortgage was declared to be a lien on the premises described therein, prior and superior to the lien created by the docketing of the bond, and those premises were directed to be sold subject to that mortgage. The judgment also provided that all the lands owned by Faulkner, upon which the bond became a lien, should be sold prior to any of the land owned by Whitman. After the commencement of this action, Whitman died and the defendant Rebecca E. Whitman and others were appointed executors of his last will and testament, and have been made parties defendant, and they appeal from so much of the judgment as declares that the lien created by the Wadsworth mortgage is prior to the lien created by the docketing of the bond. The defendant Hyland appeals from the entire judgment.

*Fred. W. Noyes,* for the executors, etc., appellants.

*J. A. Van Derlip,* for Hyland, the appellant.

*Hubbard & Coyne,* for the defendant Wadsworth, respondent.

*Charles J. Bissell,* for the plaintiff, respondent.

BARKER, P. J.:

It is conceded by all the parties that, on docketing the bond as provided by chapter 10 of the Laws of 1885, the same became a lien on all the lands owned by the collector and each of his sureties, as provided in section 20, chapter 11, title 3, article 2, part 1 of the Revised Statutes, which provides that " every such bond shall be a lien on all the real estate held jointly or severally by the collector or his sureties, within the county at the time of the filing thereof, and shall continue to be such lien till its condition, together with all costs and charges which may accrue by the prosecution thereof, shall be fully satisfied." Neither of the appellants disputed but that, as between Wadwsorth and Faulkner, the mortgage by the latter to the former to secure the loan of $10,000, was a specific lien upon the premises embraced therein. The lien on Faulkner's land secured by the docketing of the bond is a general statutory lien upon all of Faulkner's real estate at the time of the filing thereof. There is nothing in the statute which expresses or indicates that it was the intention of the legislature that the lien created thereby should supersede or be prior to the equities of third parties existing in the lands at the time the statutory lien was created. It is the apparent purpose of the statute that if the collector or his sureties were the owners of any real estate, that the bond should become a lien thereon, but there is no requirement in any statute that the collector, or either of his sureties, should be the owner of real estate, with a view of securing the public against the collector's defalcation. Without the application of general principles of equity, this circumstance sustains the proposition that the lien was intended to be general, and not specific, and the interests of all parties having liens should be adjudicated upon the basis of their priority. There is no provision in the statute which supports the contention of the appellants that the lien created in the statute is in the nature of a mortgage, for there is no identification of any parcel of lands which is affected by the lien; and an instrument which does not describe or indentify a parcel of land, so that the same can be located, is utterly void under the general rule of law applicable to mortgages, and the same could not be recorded as such under our statutes. The lien is in its nature and character more like the lien of a judgment, although the statute does not provide the mode and manner of enforcing the same.

Without the aid of the statute, a judgment rendered in a court of record would not be a lien upon real estate, but the same is made such by the provision that a judgment shall be a charge upon lands, tenements and real estate, and chattels real of every person against whom any such judgment shall be rendered, and that the same may be sold on execution issued thereon.

It has also been frequently adjudicated in this State that a judgment, being a general lien on the lands of the debtor, is subject to every equity which existed against the lands in the hands of the judgment-debtor, and that judgment-creditors have no preference over the equitable claims of third parties. (*In the Matter of Howe*, 1 Paige, 125; *Keirsted* v. *Avery*, 4 id., 9; *Cook* v. *Kraft*, 3 Lans., 512; 2 Pomeroy's Equity Juris., § 721.)

The doctrine is clearly and certainly established in courts of equity, that prior equitable interests in a specific piece of real property have priority over a general statutory lien created subsequent to the transaction with the owner, which gives a party an interest in the particular piece of land in question. Having reached this conclusion, which sustains the judgment giving the Wadsworth mortgage priority over the lien created by the statute, the remaining questions discussed on the appeal have an easy solution.

The arrangement between the collector and James Faulkner, as to the management and use to be made of the tax moneys, and that they be deposited in the bank in which he was a stockholder and an officer, and his refusal to obey the directions of the collector to pay the money over to the county treasurer, are sufficient to charge him with the misappropriation of the funds and make him primarily liable on the bond as between the collector and his co-surety. As all the interests of the appellant Hyland in the lands owned by Faulkner were acquired subsequent to the time when the equities of the collector and of Whitman were established by the facts of the case, he cannot justly complain of the provisions of the decree which directs the order of sale of the premises made with a view of protecting those equities.

The learned counsel for the appellant Hyland contends that the action was in the nature of an action at law founded upon a contract, and should have been tried as such by a jury, and not as an equitable action by the court. Hyland was not a party to the bond, and was

not sued with a view of obtaining a money judgment against him,. and was simply brought in as a party defendant for the purpose of ascertaining his interest, if any, in the premises which were to be sold for the purpose of enforcing such judgment as might be obtained against the parties to the bond. He did not in his answer deny any of the allegations of the complaint, and, as between him and the plaintiff, there was no issue to be determined which a party has a right to have tried by a jury.

The decree provides that the premises subject to the lien be sold by the sheriff of Livingston county in the same manner, subject to. the same right of redemption in the parties interested therein, as if sold upon an execution issued upon a money judgment in a court of record. The executors of Whitman's estate object to this provision,. and insist that the sale should take place without the right of redemption, as none is given by the statute. Without affirming the proposition that the owner of the premises or the subsequent lienors. have the right of redemption on a foreclosure of the lien created by the statute, we have concluded not to disturb this part of the decree,. for this court, as a court of equity, possesses the unquestioned power to direct that the sale be made subject to the right of the subsequent lienors, to redeem in the mode and manner indicated by the judgment. The statute provides no special mode for enforcing the lien, and as it has been intimated in a prior decision, where the nature and character of the lien was considered, that the owner of the premises. and other parties having liens thereon may redeem the same as if the premises were sold on an execution issued on an ordinary judgment, we deem it prudent in this case not to give the question any further consideration. (*Upham* v. *Paddock*, 13 Hun, 571.)

The judgment should be affirmed, with one bill of costs to the respondent the plaintiff, to be paid by Hyland; and a bill of costs to the respondent Wadsworth, to be paid by the executors of Whitman's estate, out of any funds in their hands applicable to such a purpose.

DWIGHT, J., concurred; MACOMBER, J., not sitting.

Judgment affirmed, with one bill of costs to plaintiff, respondent, to be paid by appellant Hyland; and one bill of costs to the respondent Wadsworth, to be paid by appellants, the executors of Whitman, out of any funds of the estate in their hands applicable thereto.