## Case No. 6,931.

### HURST v. HURST.

[2 Wash. C. C. 69.][1]

Circuit Court, D. Pennsylvania. April Term, 1807.

LIEN ON REAL ESTATE—JUDGMENTS—REVIVAL.

1. Construction of the acts of the assembly of Pennsylvania, passed in 1772, and April 4, 1798, relative to judgments, and to their lien on real estate.

[Cited in Koning v. Bayard, Case No. 7,924.]

2. The true construction of those laws, taken together, is, judgments shall be enrolled when they are signed, and they shall not, by relation, affect bona fide purchasers or mortgagees; and as to such persons, the lien of the judgment creditor shall cease, unless revived in five years by scire facias.

[Cited in Thompson v. Phillips, Case No. 13,-974; Lane v. Ludlow, Id. 8,052.]
[Cited in Re Howe, 1 Paige, Ch. 130; Trapnall v. Richardson. 13 Ark. 558; Payne v. Wilson, 74 N. Y. 355.]

This was a rule, obtained by the executors of Brownjohn, and other creditors of Charles Hurst, upon the marshal, to bring into court the money levied upon an execution of Timothy Hurst against Charles Hurst. to be disposed of among the applicants according to the priority of their judgments. The judgment of Brownjohn was obtained in the state court of Pennsylvania, in 1787, upon which an execution issued in the same year, and sundry subsequent executions of venditioni exponas issued, down to July, 1799, on which part of the debt was levied. The execution of Timothy Hurst issued upon a judgment, recently obtained in this court. [Case No. 6,930.] The claim of Brownjohn's executors to the money brought into court was opposed by Wilson, who obtained a judgment in this court against Charles

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

Hurst, in April, 1791. The ground upon which a preference was claimed for this judgment, which was subsequent to that of Brownjohn's, was, that the latter had lost his lien on the lands of Hurst, by his having omitted to sue out a scire facias, in pursuance of the act of assembly of Pennsylvania, passed the 4th of April, 1798 [3 Smith's Laws 331], declaring that no subsequent judgment now on record, shall continue a lien beyond five years from that time, or the time it is rendered, unless within that period a scire facias be sued out, and prosecuted in the manner prescribed by the law.

### Hallowell & Hare, for Brownjohn.

The act of assembly intended to protect purchasers only, and not creditors; and though the lien would not prevail against the former, if bona fide, yet it cannot be impeached by the latter. The mischief of the law, as it previously stood, was, that purchasers had no means of finding out what judgment liens were outstanding, since they did not lose their force from their antiquity; and therefore the mode prescribed by the law in question, to give them publicity, was well intended to remedy the evil. That this was the intention of the legislature, appears from the preamble, which speaks only of purchasers. But even a purchaser, with notice, would not be permitted to impeach our lien. The preamble is a key to the intention of the legislature. Cases cited, as to the use and force of a preamble: Plow. 232, 369; 1 Inst. 79; 6 Bac. Abr. 380, 381, 384, 586, 587; 1 Atk. 174, 182; 1 Ves. Sr. 364, 365, 366; 1 Eq. Cas. Abr. 19; 2 Eq. Cas. Abr. 684. The subsequent clauses of the law show the true intention to be expressed by the preamble; for the scire facias is to be served on the alienee, terretenants, and debtor, but not on creditors. A purchaser, with notice, will be bound by a judgment, though not docketed according to the statute, 4 and 5 W. & M. c. 20; 2 Eq. Cas. Abr. 684. No statute shall exclude all equity. 2 Rolle, 501; Sir W. Jones, 39, 123; 2 Vern. 234, 750. The same principle applied to purchasers under the registry act of Anne. 1 Ves. Sr. 66. It was admitted, that no case had yet been decided in the state courts upon this act of assembly; but apposite cases, decided upon other acts, were relied upon. [Levinz v. Will] 1 Dall. [1 U. S.] 430; Stroud v. Lockart, 4 Dall. [4 U. S.] 153. Subsequent purchasers, with notice, are bound by a prior unrecorded mortgage, notwithstanding the act of 1715 [Hooton v. Will] 1 Dall. [1 U. S.] 450. The legal relation of a judgment will overreach a domestic attachment, which is even a stronger lien than a judgment. A judgment will relate back as to creditors, but not as to purchasers. 3 P. Wms. 398. Upon the doctrine of relation, to overreach the claims of creditors, were cited, 1 Sell. Prac. 526; 2 Vern. 218; 2 Show. 485; 6 Mod. 225. A general creditor is not so much favoured as a person who has obtained a specific lien, on the faith of which he advanced his money. 5 East, 545; 1 P. Wms. 278; 2 Ves. Sr. 662, 663. No scire facias was necessary in this case, an execution having issued, and having been kept alive. 2 Cromp. Prac. 189.

### Mr. Rawle, for Wilson.

The words of the enacting clause are general and unqualified. A judgment on which no scire facias shall have been sued out within five years, shall cease to be a lien; that is, the land, after that period, is absolutely exonerated, not as it regards any particular claimant, but as against all the world. As to the force of a preamble, the rule is, that if it be narrower than the enacting clause, and inconveniencies may exist to be remedied which are not enumerated in the preamble, it shall not control the enacting clause; nor can the former be properly referred to, to explain or govern the latter, but where the latter is ambiguously expressed. 6 Bac. Abr. 380, 381; 1 P. Wms. 520; 4 Term R. 793; Cowp. 543; 5 East, 544, 545. The act was intended to supply the deficiencies of a former law, and is in fact a supplement to one passed in 1772 (chapter 680); and therefore it is against all rule to narrow its construction. That law is an exact copy of the statute of frauds in England, and speaks only of purchasers in the preamble; yet it has always been extended farther by construction. The mischief not remedied by that law, was as extensive and as great in respect to creditors as purchasers; and the law under consideration was intended to make the remedy co-extensive with the mischief. Finch, Prec. 478; [Welsh v. Murray] 4 Dall. [4 U. S.] 320.

The idea of notice is altogether inapplicable to this case; because, if an incumbrance be made void by statute, no person coming in afterwards, though with notice, shall be affected by the incumbrance. Notice will not make good an act void by the statute. Cowp. 280.

It was urged, that execution having been taken out within the year, no scire facias is necessary. This is the doctrine under the statute of Edw. III.; but that statute has a saving in it not to be found in this law. Besides, the scire facias mentioned in this law, is a special one, unlike that at common law.

### Mr. Lewis, for Timothy Hurst.

The act extends to the protection of creditors as well as purchasers. He argued in support of the points contended for by Mr. Rawle. Upon the subject of the preamble, he cited 2 Ld. Raym. 1423; 2 P. Wms. 318. The title of a law being the act of the legislature in this state, is as much a part of the law, and as much to be respected, as the preamble. The title to this law was general as the enacting clause. The inconvenience of old judgments continuing a lien to any indefinite time, is as great in respect to cred-

itors, and particularly so to executors, in the administration of assets, as to purchasers. As to the doctrine on the statute of frauds, he cited 1 Eq. Cas. Abr. 358; 1 Burr. 474; 2 Eq. Cas. Abr. 684.

The preamble and enacting clause of the registry act, correspond entirely. That statute proceeds on the ground of fraud; so do the cases under the docketing law of England; but none of them extend to creditors prosecuting legal means to recover their debts.

The act of enrolments (27 Hen. VIII. c. 16) takes no notice of subsequent purchasers, but is general, that no estate shall pass. A deed not enrolled is void, as to all persons whatever. Com. Dig. "Barg. and Sale," D; 1 Id. 543; 1 Inst. 147b; Moore, 34; Sav. 63; Hob. 261, 262; Cas. t. Talb. 167; 4 [Coke] Rep. 71; 2 Rolle, 119; 2 Saund. 11, 12. A recognizance in England, not enrolled, is not a lien, unless the chancellor allow the enrolment; and when this is allowed, the court always takes care that it shall not overreach, by relation, an intermediate security, obtained by a third person. 2 Vern. 234; 1 P. Wms. 240; 2 Cas. Ch. 47. A judgment not docketed, cannot relate so as to overreach a judgment creditor or purchaser. Finch, Prec. 478.

WASHINGTON, Circuit Justice (PETERS, District Judge, absent). This being a case of the first impression, and arising out of a state law, I have only to regret that it has fallen to the lot of this court to give a construction to it, before it had been considered and decided upon by the supreme court of this state. A number of cases have been quoted at the bar, which I do not think entirely applicable to this; but as they seem to have a bearing upon it, it may be proper to notice them, and in doing so, I shall, to save time, arrange them in classes. They were read in order to prove, that the enacting clause of a statute may be construed narrower than the words of it import. The statute of enrolments (27 Hen. VIII.) gives rise to the first class; the cases under it prove, that the statute declared that no estate should pass by bargain and sale, unless enrolled in six months; yet that the deed is valid, except as to subsequent purchasers, without notice. The reason of these decisions is obvious. The plain intention of the law was to remedy certain mischiefs resulting from the statute of uses, which, by tolerating secret conveyances unknown to the common law, was productive of inconveniences to those who might afterwards become purchasers of the estate, without knowing of such former prior conveyance. The reason for passing the statute did not apply. It would require great ingenuity to give to these cases a shape, which could throw light upon that now under consideration. They do not allude to creditors, and they depend upon the peculiar circumstances which produce the law under which they arose. Cases upon the statute of Elizabeth, to prevent fraudulent conveyances, form the second class. But it is to be remarked, that this statute extends, by express words, to creditors, as well as to purchasers, who are not bound, though they purchase with notice; and the reason is plain. The conveyance is fraudulent, and fraud at common law avoids every act. These cases, therefore, are still more inapplicable than the former. The third class relates to leases by ecclesiastical persons for a longer term than three lives, or twenty-one years. Such leases were considered as void only against the successors, because they alone were intended to be protected by the clear intention of the legislature. These cases only prove, that where the intention of the legislature is plain, that intention will control the positive words of the statute—a position which is not denied, but which, as applied to the present case, is a begging of the question in dispute. The registry act of Anne gives rise to the fourth class of cases. That statute avoids all secret conveyances not registered within a limited time, as to subsequent purchasers and mortgagees, for a valuable consideration. The cases decide that such deeds, though not registered according to the requisitions of the act, are nevertheless good against purchasers with notice. The reason is, that if they have notice, the conveyance is not a secret one, and therefore not within the statute. Next comes a class of cases more apposite to the present, and which will deserve more particular notice: I mean those determined upon the statute 4 & 5 W. & M. c. 20, for docketing judgments. It declares that judgments not docketed, shall not affect lands as to purchasers or mortgagees, or have a preference against heirs and executors, so as to affect them. So likewise the statute of frauds (29 Car. II.) declares that judgments shall be docketed when signed; and that the enrolment of recognisances shall be set down at the margin of the roll, within a fixed time; and that as to bona fide purchasers for a valuable consideration, they shall be considered in law as judgments, only from the time they are signed and set down, and shall not relate.

At common law, we know that recognisances, when enrolled, related to the caption, and judgments to the first day of the term. Let us now examine the decisions which have been made upon this statute.

In 2 Saund. pt. 1, p. 9, note 6, it is stated, that that part of this statute which respects the lien of judgments on lands, is applicable only to purchasers, and not to judgment creditors, for that purchasers only are protected by the words of the law: that this is the case, even as to the part of the statute which respects goods, which is general, and does not particularly mention purchasers: that the law is the same as to judgments

under the statute of William and Mary, except that as to heirs and executors in the administration of the estate, judgments not docketed are considered as simple contract debts. In the case of Robinson v. Tonge, 3 P. Wms. 399, it is said, that the statute of frauds concerns purchasers only, and not creditors, who remain as at common law. The case from Finch, Prec. 478, declares, in effect, the same principle. A creditor advancing money on the credit of a judgment, may well stand in a different situation from a general judgment creditor, since he may be considered as a quasi purchaser.

I come now to consider the statute of frauds of this state, and the state decisions upon it. This statute passed in 1772 [1 Smith's Laws (Pa.) 390], and as to judgments, is an exact copy of the English statute of frauds. It enacts, that the judge or officer of any court, who shall sign any judgment, shall at the time of signing it, set down upon the book or record, the day and month, which are also to be entered on the margin of the record, where judgment is entered; such judgment, as against purchasers, bona fide, for a valuable consideration of lands, &c. to be charged thereby, to be judgments only from the time they are signed, and shall not relate to the first day of the term when they were entered, or to the return day, or day of filing bail.

In Hooton v. Will, 1 Dall. [1 U. S.] 450, the court were unanimous, that a judgment related back so as to cut out a domestic attachment; which, it seems agreed, lays as firm hold of the land as any lien possibly can. In the case decided in the common pleas, no regular judgment was pronounced. In the case of Welsh v. Murray, 4 Dall. [4 U. S.] 320, it was decided, that the judgment first entered must first be paid; which seems to show that the court considered that the statute of frauds of this state, respecting the relation of a judgment, applied to judgment creditors as well as to purchasers. Unless the latter case was decided upon the practice of which some evidence was given, (and it it were, it will prove nothing as to construction, and will therefore be unimportant in the view which I shall take of this case;) it will be difficult, nor shall I attempt to reconcile it with that of Hooton v. Will. If the cases are in opposition to each other, I must resort to the English decisions on a statute precisely similar to that of this state; which, it appears, confine the words of the statute to the case of purchasers, and do not extend them to judgment creditors. This principle being approved and adopted by the court, we come more immediately to the statute under consideration, in which the importance of the principle, in assisting the construction of the statute, will be pointed out. Let it be premised, that a literal and strict construction of the enacting clause cannot be insisted upon. It would be too much to insist, that a purchaser with notice

of Brownjohn's judgment, or that Hurst, the defendant, could take advantage of the judgment, not having been revived in the mode pointed out by the statute. This would be repugnant to the obvious intention of the law. We must then depart, in some measure, from the letter of the enacting clause.

I admit the soundness of the rule laid down by the opponents of Brownjohn's judgment, that the preamble is only to be resorted to, in order to explain an ambiguity appearing in the enacting clause; but this preamble is worthy of notice, as it refers us to a former law, which this is intended to render more effectual. The latter law has indeed been termed by the counsel for Wilson, a supplement to the former. The preamble requires us to consider is as such, though being in pari materia, they might, and ought to be considered together, were the preamble out of the question. The law to which we are thus referred, is the act of frauds, passed in 1772. Taking it in conjunction with the law under consideration, we at once discover the mischief and the remedy, not from the preamble alone, but from that and the enacting clause taken together. What was the old law? That judgments should not relate back, or be a lien on land, as against bona fide purchasers and mortgagees, but from the time they are signed and enrolled. The mischief which, notwithstanding this law, still existed, was, that after a great length of time, purchasers might find it difficult to discover what judgments were outstanding, so as to affect the land they wished to purchase. The lien extending to all lands of the debtor, no person could certainly know which part he might safely purchase. To remedy this evil, the last law requires the judgment creditor, within five years, to sue out a scire facias, and to give such public notice of its existence, that all the world may know what and where the judgment is. But, who are the persons for whose benefit this additional remedy is provided? Surely those in favour of whom the former law had been made, but which was found not to be effectual. To extend the law to other persons, would be repugnant not only to the preamble, but to the enacting clause also. If we are to consider the two laws together, which is certainly proper, it would provide a remedy where none was intended. How then do the two laws read, taken together? Judgments shall be enrolled at the time they are signed, or they shall not by relation affect a bona fide purchaser, or mortgagee; and as to such persons, the lien of the judgment creditors shall cease, unless the judgment be revived within five years by a scire facias. This reading produces a perfect harmony between the old and new law. That this was the intention of the law, is further manifested from the third section of it; which, noticing those who

may be interested, directs the scire facias to be served on the debtor, or his representatives, his alienees and terretenants. If the judgment creditor had been the object of the law, and intended to be protected by it, why not have directed the writ to have been served on him, who might as easily have been found as the alienee.

I think it is not improper to make some observations on the cases which I before referred to under classes. In not one of them are creditors noticed, except in the following instances: First; those under the first statute of Elizabeth against fraudulent conveyances, and in that creditors are specially mentioned. Second; where the creditor is considered quasi a purchaser; as where he advances money on the credit of the judgment, trusting to that as his security, without notice of the judgment (Finch Prec. 478); and that this distinction is closely observed, appears from those decisions in equity which establish even an agreement to sell land, against a judgment creditor; and which prevent a prior judgment creditor from tacking it to a subsequent mortgage; though in the first case, the agreement would not prevail against a mortgage; and in the latter, a prior mortgagee, obtaining a subsequent judgment, may tack the latter to the former against an intermediate encumbrancer (Finch v. Earl of Winchelsea, 1 P. Wms. 278; 2 Ves. Sr. 662, 663). The reason is plain. The judgment, though a lien, is not a specific lien on the land; that is, the creditors did not go on the security of the land, but trusted to the general credit of the debtor and of his estate. I am therefore of opinion, that the judgment of Brownjohn must prevail against the other judgment creditors.

NOTE.—The act of 1798 [3 Smith's Laws (Pa.) 331] is as follows. The title is, "An act limiting the time during which judgments shall be a lien on real estate, and suits may be brought against sureties of public officers." Preamble.—"Whereas the provision heretofore made by law for preventing the risk and inconveniences to purchasers of real estate, by suffering judgments to remain a lien for an indefinite length of time without any process to continue or revive the same, hath not been effectual; therefore," &c. It enacts, that no judgment, now on record in the courts of this state, shall continue a lien on the real estate of the debtor longer than five years from the passing of the act, or from the first return day of the term of which such judgment is entered, unless the person obtaining it, or his legal representatives, or other persons interested, shall, within five years, sue out a scire facias to revive the same, which writ of scire facias shall be served on the terretenants or persons occupying the real estates bound by the judgment, or where he or they can be found, on the defendant, his feoffee or feoffees, or the heirs, executors, or administrators of such defendant, his feoffee or feoffees. And if the estate be not in the immediate occupation of any person, and the defendant, his feoffee, or their heirs, executors, or administrators cannot be found, proclamation is to be made in open court, at two terms, by the crier of the circuit where the judgment is: calling on all persons interested, to show cause why such judgment should not be revived: and if sufficient cause be not shown, at or before the second term, the court is to order the judgment to be revived during another period of five years, against the real estate of the defendant; and similar proceedings are to be had, at the end of said five years, and so on from period to period.

[A bill seeking equitable relief from the judgment in favor of Timothy Hurst was dismissed on demurrer in Case No. 6,932.]