[*125]

*IN THE MATTER OF THE PETITION OF HOWE AND WIFE.

H. was seized in his own right of an undivided fourth part of a tract of land, and was also seized in right of his wife of one other undivided fourth part thereof. D. & T. also each owned one undivided fourth part. The share of T. was subject to a mortgage. A voluntary partition was made of the premises between the parties, by which two lots thereof were released by D. & T. to H. and wife, and the residue was released by H. and wife to D. & T. as tenants in common, they paying to H. and wife $675 for the difference in value. Afterwards the mortgagee, without regarding the partition, and without making H. and wife parties to the suit, foreclosed his mortgage against T. in Chancery, and sold one undivided fourth of the whole premises, leaving a balance due on the mortgage after the sale. Previous to the foreclosure, and subsequent to the partition, several judgments were recovered in the Supreme Court against T. T., after the recovery of these judgments, assigned all his property to trustees for the payment of his debts. Subsequent to this assignment, the premises released as aforesaid by H. and wife to D. & T. were sold by virtue of a decree in Chancery, obtained in a partition suit brought by one of the heirs of D. One-half of the proceeds of this partition sale had been paid to the representatives of D., one-fourth to the mortgagee of T., and the remaining one-fourth was in the hands of the master. Under these circumstances, this remaining one-fourth was decreed to be applied in satisfaction of the balance due on the mortgage against T., for the purpose of discharging the two lots released to H. and wife from the lien of that mortgage.

Had the mortgagee made H. and wife parties to the bill for foreclosure of the mortgage against T., the court would have decreed a sale only of the share assigned to T. upon the voluntary partition. The equitable rights of H. and wife were not altered or affected by the general assignment of T., for the benefit of his creditors, or by the judgments recovered against him subsequent to the voluntary partition.

The general assignees of a bankrupt, take his estate subject to every equitable claim existing against it on the part of third persons; and this is the case, although they had no notice of such claims at the time of the assignment. A different rule exists in the case of mortgagees and *bona fide* purchasers of the legal estate.

Judgment creditors have no preference over prior equitable claims against the estate of the debtor.

Thus a contract for a mortgage or the sale of real estate, has been preferred to judgments recovered subsequent to the contract.

An agreement for a mortgage is, in equity, a specific lien on the land.

1828.

In the Matter of Howe.

PREVIOUS to the 3d of January, 1817, the petitioner, Howe, was seized, in his own right, of one undivided fourth part of a certain tract of land in the city of New York; and was also seized in right of his wife, of one other undivided *fourth part thereof. David Dunham owned one undivided fourth, and the remaining one-fourth belonged to D. D. Tompkins. The share of Tompkins was subjected to the lien of a mortgage given by him to George J. Banks, in October, 1806. On the 3d of January, 1817, an unequal division of the premises was made by the parties in interest; by which two lots were released by Dunham and Tompkins to Howe and wife, and the residue was released by Howe and wife to Dunham and Tompkins, as tenants in common; they paying to Howe and wife $675 for the difference in value. In December, 1821, Banks filed a bill in Chancery to foreclose his mortgage, without noticing the partition which had been made of the premises, and without making Howe and wife parties. A decree was obtained for the sale of one undivided fourth part of the premises as originally mortgaged; and at the sale, Banks bid the same in, leaving a considerable balance still due on his mortgage. In May, 1821, three judgments were recovered in the Supreme Court against D. D. Tompkins, which judgments have since

June 30th.

[*126]

1828.

In the Matter of Howe.

been assigned to G. W. Tompkins, as guardian of Ray Tompkins, an infant. In July, 1821, another judgment was recovered in the same court in favor of Mangle Minthorne. On the 15th of January, 1822, D. D. Tompkins made a general assignment of his property to Isaac Pierson and others, as trustees, for the payment of his debts; and two days thereafter, Cornelia Juhel recovered another judgment against him in the Supreme Court. In 1825, one of the heirs of Dunham filed a bill in this court against his widow and the other heirs, for partition of the lands released by Howe and wife to Dunham and Tompkins, to which suit Banks and the assignees of Tompkins were also made parties. Under a decree in that cause, the premises have been sold. One-half of the proceeds have been distributed among the representatives of Dunham, one-fourth has been paid to Banks, and the remaining one-fourth is in the hands of the master, subject to the further order of this court. The petitioners claim to have the moneys in the hands of the master applied in satisfaction of the balance due on Bank's mortgage, for the purpose of discharging their two lots

[*127]

from the lien of that mortgage. *The judgment creditors of Tompkins claim to have it applied towards their judgments, and the assignees of Tompkins claim it for the benefit of the creditors generally. The balance due to Banks on the mortgage, after deducting the whole amount, for which the original undivided fourth sold upon the foreclosure, exceeds the amount of the fund now under the control of the court.

*C. C. King*, for the petitioners.

*W. Kent*, for G. W. Tompkins.

*D. S. Jones*, for the executors of Minthorne.

*H. W. Warner*, for the assignees of Tompkins.

*W. Slosson*, for Cornelia Juhel.

THE CHANCELLOR:—If the division of the property between the original owners, threw the whole mortgage previously given by Tompkins upon his undivided half of the premises released to himself and Dunham on that division, Banks would clearly be entitled to the funds in the hands of the master, to satisfy the balance now due on his mortgage. That balance would still remain a lien upon so much of that undivided half as was not sold under the decree of foreclosure. But if, after that division, as I am inclined to believe, under the circumstances of this case, the mortgage remained a lien at law upon the one-fourth of the two lots conveyed to Howe and his wife in severalty, the foreclosure was a nullity as to these lots, Howe and wife not being parties thereto. And the balance due on the mortgage being a subsisting lien on the undivided fourth part of the two lots, it may still be enforced against them. Howe and wife have therefore a direct interest in having this balance paid out of the moneys arising from the sale of that part of the property which they gave him in exchange on the original division. As between Howe and wife and Tompkins, there could be no doubt of their equitable claim to have those moneys thus applied. If Banks had filed his bill to foreclose the mortgage immediately after that division, and had made Howe and *wife and Dunham parties to the same, there can be no doubt that this court would have decreed a sale of the share assigned to Tompkins on that division, to satisfy the mortgage. And the question which now arises is this: Are the equitable rights of Howe and wife altered or divested by the general assignment of Tompkins for the benefit of his creditors, or by the judgments which have been recovered against him subsequent to that division? It is a well settled rule of equity, that the general assignees of a bankrupt take his estate subject to every equitable claim which exists against it by third persons; [1] and that they cannot avail themselves

[1] The assignee succeeds only to the rights of the assignor: *Luchenbach* v. *Brickenstien*, 5 Watts & S. 145, takes the property subject to all equities:

1828.

In the Matter of Howe.

[*128]

of the legal estate thus acquired, to defeat a prior equity, of which they had no notice at the time of the assignment. They differ in this respect from *bona fide* purchasers of the legal estate, and from mortgagees who have advanced their money on the credit of the land, and who are considered *quasi bona fide* purchasers.

I can see no good reason why a different rule should be applied to general assignees, for the benefit of all the creditors, created by the voluntary act of the debtor, from that which prevails in respect to those created by operation of law. Neither can be considered as *bona fide* purchasers, who are protected because their legal estate is united to an equal though subsequent equity. Sir Simon Stuart's case, referred to by the counsel and by the Lord Chancellor, in *Burn* v. *Burn*, (3 Ves. jun. 576,) was an actual conveyance to trustees for the benefit of creditors; and yet it was held that a prior contract for a mortgage was entitled to a preference. The case might be different where creditors, without notice of the prior equity, had released their debts in consideration of an assignment made to trustees for their benefit.

The judgment creditors of Tompkins are in no better situation than his general creditors in relation to this fund. Their judgments were not specific liens on the land to which the petitioners' equity attached. They were general liens on all the estate of the judgment debtor; but as such they cannot prevail as against the prior equity of the petitioners.[1] I have not found any reported case in this state, where this question has been examined. It has frequently

*Moody* v. *Litton*, 2 Ired. Eq. 382; *Leger* v. *Bonnaffe*, 2 Barb. S. C. 475; *Addeson* v. *Burckmyer*, 4 Sanf. Ch. 498: and to all liens, *Corning* v. *White*, 2 Paige, 567; *Haggerty* v. *Palmer*, 6 John. Ch. 437; if on buildings, for building materials; *Twelves* v. *Williams*, 3 Whart. 485, and he takes deposits in banks, subject to any lien of the bank existing when the assignment was made, *Beckwith* v. *Union Bank*, 4 Sanf. S. C. 604, and land subject to the interest of Devisees; Swoyer's Appeal, 5 Barr. 377. See further Am. Ch. Dig. by Waterman, tit. *Assignment.*

[1] See *Dwight* v. *Newell*, 3 Comst. 185.

been discussed *in the English courts, and sometimes in the courts of this country; and I have once had occasion to examine it in the equity court for the fourth circuit.

The earliest case on this subject which I have found, is *Burgh & Burgh* v. *Francis & others*, decided by Lord Keeper Finch, in 1670. (Cases Temp. Finch, 58; 1 Eq. Cas. Abr. 320, S. C.) In that case, a bill was filed by the executors of an equitable mortgagee against the heir at law of the mortgagor, and his judgment creditors, to perfect a defective conveyance by way of mortgage, and to be relieved against the judgments, which at law were a lien upon the mortgaged premises. The court decreed a perpetual injunction against the judgment creditors, unless they should choose to come in and redeem the mortgage, which the heir at law was directed to give. This decree is said to have been afterwards affirmed by Lord Nottingham. (Per Vernon, *arguendo*, 1 Peer Wms. 279.) There is a note in Fonblanque's Treatise on Equity, (1 Fonb. 34, note r,) referring to that case, and by which its authority is attempted to be shaken. But the annotator is evidently wrong in supposing that is the only case to be found in the books where a court of equity has interfered, in prejudice of a defendant having a legal interest for a valuable consideration and without notice. The decision in the Suffolk case, referred to in Nelson's Reports, (1 Nels. Ch. Rep. 184,) supports the decision in *Burgh* v. *Francis;* and in 1715, the same principle was most distinctly recognized by Lord Cowper, in the case of *Finch* v. *The Earl of Winchelsea*, (1 Peer Wms. Rep. 282.) In *Burn* v. *Burn*, (3 Ves. jun. 576,) the counsel, Sir John Scott, attorney-general, (afterwards Lord Eldon,) and Mr. Mitford, solicitor-general, (afterwards Lord Redesdale,) state it as a well known principle, that courts of equity constantly control the effect of judgments subsequent to a contract for the sale of the estate. And in the case of *Sir Simon Stuart's* estate before referred to, it was also held that the equitable mortgagee was entitled to a preference over subsequent judgment creditors.

1828.

Covell
v.
Tradesman's
Bank.

In *Delaire* v. *Keenan*, (3 Desauss. Rep. 74,) the Court of Chancery of South Carolina decided, that an agreement for *a mortgage was in equity a specific lien on the land ; and that the mortgagees were entitled to a preference over subsequent judgment creditors. Chancellor Desaussure, in delivering his opinion, refers to the decision of Lord Cowper, in *Finch* v. *The Earl of Winchelsea*, and says the opinion delivered in that case has been the settled doctrine ever since. The same principle was sanctioned by the Supreme Court of Pennsylvania, in the case of *Foster* v. *Foust*, (2 Serg. & Rawle, 11,) and by Washington, Justice, in the case of *Hurst* v. *Hurst*, in the Circuit Court of the United States. (2 Wash. C. C. Rep. 69 ; 3 Binney, 347, note, S. C.) The same principle is recognized by several elementary writers, as the established doctrine of the courts of equity in England. (Sugden's Law of Vendors, 336 ; 2 Cruise's Dig. 64, tit. 14, Estate by Statute, Merchant, &c., sec. 50.)

In the matter before me, I can decide in favor of the manifest equity of the case, not only without disturbing any known legal or equitable principle, but in perfect accordance with the settled doctrines of this court. I shall therefore direct the moneys in the hands of the master to be paid over to Banks, in satisfaction of the balance due on his mortgage.