Denio, J. (Dissenting.)
The fraud of Townsend, by which he was enabled to procure from the plaintiffs the- acknowledgment of satisfaction of the mortgage on the mill lot, is positively found by the judge. The right of the plaintiffs to the relief asked for, and which was afforded them at the special term, was therefore undeniable, unless the bank, of which the defendant Smith is the receiver, as the subsequent mortgagee of Townsend, stands in a better position than its mortgagor occupied. The plaintiffs’ mortgage being satisfied at law, the bank became the mortgagee of the legal title in the land. The right of the plaintiffs to set aside the satisfaction and reestablish the mortgage was an equity merely, and could not be asserted against a bona fide purchaser or mortgagee. The question in the case is, whether the bank can claim the character of a bona fide mortgagee. Its pretension to be so considered is denied, on the allegation that the corporation, or its officers, had notice of the plaintiffs’ equity, by means of the possession by Townsend of the premises, at the time the mortgage to the bank was executed, under the lease from the plaintiffs. The legal title was in the wife of Townsend, and she was one of the mortgagees. Her husband was in the possession of the premises. As there is no evidence that they lived separately, his possession is to be taken as her possession. They were married before the late statutes had weakened the bonds of marriage by creating separate and hostile interests between married persons. *261 Before that change the husband had, during the joint lives of himself and his wife, a life estate in the wife’s lands; and if they had a child, he became a tenant by the curtesy. But, independently of this common-law right, which perhaps did not apply to this property, if it was purchased subsequently to their marriage, as it may have been, I am of opinion that the husband’s possession of the real estate of his wife is not to be considered hostile to the legal title, but, in the absence of any peculiar circumstance, is to be considered her possession. When, therefore, they mortgaged to the bank, the possession of Townsend was in no way inconsistent with the deed, and the bank was not under the necessity of making any inquiry. It is only where a person other than the grantor or mortgagor is in possession that it is necessary, in order to confer upon the purchaser or mortgagee a bona fide character so as to avoid any equity residing in the party so in possession, that he should make due inquiries of him as to his title. In general, the purchaser takes subject to the right of the party in possession. The rule, I conceive, has no application to the present case. Although Townsend had a lease from the plaintiffs, the bank had no notice of that fact. He continued in possession in the same manner ostensibly as before he took the lease, and that instrument constituted no part of the chain of title under which Mrs. Townsend, the real owner, held the land.
But it was not enough that the bank had no notice of the plaintiffs’ rights. It was also necessary that it should have advanced money, or other valuable thing, to obtain the mortgage, or in consequence of it. If it was executed simply to secure an existing debt, nothing being advanced and no obligation or security given up, the plaintiffs are not precluded from setting up their equity against the bank as mortgagees ' of Townsend and his wife. (In the Matter of Howe, 1 Paige, 125; Arnold v. Patrick, 6 id., 310.) Upon this point, I think the defendant’s case is defective. When the mortgage was given, Townsend was under liabilities to the bank to the' amount of $145,000, which was many times the value of the property. But it was a continuing security for future advances *262 and indebtedness, go that if this debt had been paid off in whole or in part, so as to reduce the amount remaining unpaid below the limit mentioned in the mortgage, and additional loans had been made without notice of the plaintiffs’ equity, the bank would have been a bona fide mortgagee in respect of such loans. If there had been no limitation of the amount for which the mortgage was to stand as a security, all the subsequent advances might have conferred upon it the character of a bona fide transfer, notwithstanding the inadequacy of the property to secure the old and the new portions of the debt. But it was an express provision in the instrument that it was to be a security for an amount not exceeding $93,600. As the debt for which immediately upon its execution it became a security was much móre than that amount, no subsequent advance could have any relation to the mortgage, unless the existing indebtedness should be reduced below the limit named. If payments had been made on account of that debt, so that so much as $93,600 did not remain due, then every future advance up to that amount would be a loan upon the mortgage security. When that amount of indebtedness was again reached, subsequent advances would not connect themselves with the mortgage until future payments should again reduce the debt below the amount mentioned in the mortgage.
The findings of fact at the end of the case do not show that anything was paid after the execution of the mortgage to the bank. The contrary is inferable; for, it is stated that the liabilities of Townsend and of the Buffalo Car Company, at the time the mortgage was given, exceeded $145,000, arid that the amount was increased by subsequent loans, up to August 27, 1857, to over $281,000. No inference can be drawn from this that anything had been paid during the interval; but, as Townsend continued to transact business with the bank, it is very probable the account fluctuated. The evidence of Mr. Davis, who seems to have managed Mr. Townsend’s business and that of the Car Company at the bank, is, that the debt was not diminished at any time after the giving of the mortgage. It may possibly consist with this statement that the *263 whole of the indebtedness constituting tha $145,000 may have been paid, and yet that the aggregate indebtedness of Townsend and the Company was hot diminished; that is, they may have paid up the whole of the old debt while they were contracting a fresh one. As the security was a continuing one, the mortgage would attach, as has been mentioned, to the new loans as soon as the old debt was so far diminished as to leave a place, in the maximum amount for which the mortgage was a security, to be filled up.
It is not improbable that the bank may have consented to make fresh advances because it considered so large an amount of the old debt secured by the mortgage; but this would not make it a bona fide mortgagee in respect to such new loans. To have that effect, the loans must have been made on account of the mortgage security, in such a sense as that they might be collected by a foreclosure and sale of the mortgaged premises, if the proceeds were sufficient. If the question were between tire mortgagee and subsequent incumbrancers of the mortgaged premises, the former could not retain more than $93,600 out of the proceeds of the sale, and any residue would belong to the lien holders next in the order of time. If that sum remained due on the debt which existed when the mortgage was given, it is then clear that no advances have been made on account of the mortgage security; and there is nothing to show that so much has not at all times remained unpaid of that debt.
I am, therefore, of opinion that the receiver must be considered as succeeding to the case of the mortgagors, and that his title is subject to the plaintiffs’ equity. If this were agreed to, the judgment of the general term would have to be reversed, and that of the special term affirmed; but it appears that different views are entertained by a majority of the judges.
Davies and Mason, Js., concurred in this opinion,
Order affirmed, and judgment absolute for the defendants.