Mr. Justice CLIFFORD,
after stating the case, delivered the opinion of the court:
1. Appellant contends that the proceeds of the sale of the road, after paying the costs of suit, should be ratably applied towards the payment of the first mortgage bonds and the overdue interest warrants under the same, instead of being applied, as directed in the decree, to the payment of the judgment in favor of the contractor, and to the overdue interest warrants, to the exclusion of the principal of the bonds. Appellees insist that inasmuch as the contractor completed the road by the expenditure of his own means, under a written agreement with the company, purporting to secure to him the possession of the road and its earnings, he has a right to retain the same, and that the proceeds of the sale should be applied to the liquidation of the indebtedness of the company to him until the same is fully discharged.
Possession of the road having been delivered by the company to the contractor for the purpose of completing the road, the respondents insist that he, the contractor, having never surrendered the possession, now holds a prior lien upon the road, and in equity is entitled to a priority in the distribution of the proceeds of the sale. Attempt is made *266 to sustain that proposition, chiefly upon two grounds. 1st. It is insisted that the mortgage to the complainant, as trustee for the benefit of the bondholders, does not hold any part ol the road except what was built at the time the mortgage was executed and delivered. 2dly. They contend that a contractor, expending money and labor in building a railroad, as in this case, under an agreement with the company that he shall have the possession of the road until he is fully paid, thereby acquires a priority over an elder valid mortgage.
Neither of the propositions is based upon any peculiar circumstances in the case, nor are there any such disclosed in the evidence to take the case out of the general rules of law applicable to similar controversies respecting railroad transactions. Nothing of the kind is pretended, and it is obvious that the pretence, if set up, could not be sustained, as there is nothing in the circumstances to distinguish the case from the ordinary course of events in that department of business. Certain persons procured a charter for a railroad, and wanting means to complete it, decided to issue their bonds as a means of borrowing money, and mortgage their road to secure their payment. Railroads, it is believed, have frequently been built in that way, and if it be true that such a mortgage holds no part of the road except what was completed, it is quite time that the rule should be distinctly announced, that the consequences of further misapprehension upon the subject maybe avoided. But we are not prepared to adopt any such rule, or to admit that the proposition has any foundation whatever in the facts of this case. On the contrary, we hold it to be clear law that the complainant, as the trustee for the benefit of the bondholders, took “the road built and to be built,” together with all the other matters and things specifically enumerated in the mortgage. Express authority was given to the company by the law of the State to borrow such sums of money as they might, deem necessary for completing and operating their railroad, and to issue and dispose of their bonds for any amounts so borrowed. What they wanted was money to enable them to make the road, and the authority was expressly given to *267 auth orize them to mortgage it for that purpose. Authorized as this mortgage was by express statute, the case is even stronger than that of Pennock et al. v. Coe (23 Howard, 128), where the rights of the parties depended upon the general rules of law.
Terms of the grant in that ease were, “ all present and future to be acquired property,” and yet this court held, 'in a controversy between the grantees of a first mortgage and the grantees of a second mortgage, that the first took the future acquired property, although the property itself was not in existence at the time the first mortgage was executed. While enforcing the rule there laid down, this court said there are many cases in this country confirming the doctrine, and which have led to the practice extensively of giving that sort of security, especially in railroad and other similar great and important enterprises of the day. Several cases were cited by the court on that occasion, which fully support the position, and many more might be added, but it is unnecessary to refer to them, as the one cited is decisive of the point. 2 Story Eq. Jur. (8th ed.), §§ 1040-1040 a.
2. Failing to sustain that position, the respondents, in the second place, rely upon the terms of the subsequent agreement made by the company with the contractor for the completion of the route. Counsel of respondents concede that the mortgage to the complainant was executed in due form of law, and the case also shows that it was duly recorded on the ninth day of March, 1855, more than eight months before the contract set up by the respondents was made. All of the bonds, except those subsequently delivered to the contractor, had long before that time been issued, and were in the hands of innocent holders. Contractor, under the circumstances, could acquire no greater interest in the road than was held by the company. He did not exact any formal conveyance, but- if he had, and one had been executed and delivered, the rule would be the same. Registry of the first mortgage was notice to all the world of the lien of the complainant, and in that point of view the case does not even show a hardship upon the contractor, as he must have known when he ac *268 cepted the agreement that he took the road subject to the rights of the bondholders. Acting as he did with a full knowledge of all the circumstances, he has no right to complain if his ■ agreement is less remunerative than it would have been if the bondholders had joined with the company in making the contract. No effort appears to have been made to induce them to become a party to the agreement, and it is now too late to remedy the oversight. Conceding the general rules of law to be as here laid down, still an attempt is made by the respondents to maintain that railroad mortgages made to secure the payment of bonds issued for the purpose of realizing means with which to construct the road, stand upon a different footing from the ordinary mortgages to which such general rules of law are usually applied.
Authorities are cited which seem to favor the supposed distinction, and the argument in support of it was enforced at the bar with great power of illustration, but suffice it to say, that in the view of this court the argument is not sound, and we think that the weight of judicial determination is greatly the other way. Pierce v. Emery (32 N. H., 484); Pennock v. Coe (23 How., 130); Field v. The Mayor of N. Y. (2 Seld. 179); Seymour v. Can. and Niag. Falls Railroad Company (25 Barb., 286); Red. on Railways, 578; Langton v. Horton (1 Hare Ch. R., 549); Matter of Howe (1 Paige, 129); Winslow v. Mitchell (2 Story, C. C., 644); Domat, 649, art. 5; 1 Pow. on Mort. 190; Noel v. Burley (3 Simons, 103).
Decree of Circuit Court not only gives precedence to the judgment of the contractor, but also to the past-due coupons or interest warrants over the principal of the bonds. Complainant objects to the decree in both pai'ticulars, and we think his objections are well founded. Terms of the mortgage are, that in ease of default in payment of interest or principal of any bond, and a sale or other proceedings to coerce the same, all bonds which shall be a lien in common therewith, and the interest accrued thereon, shall be considered, and shall in fact be equally due and payable, and entitled to a pro rata dividend of the proceeds of said sale or other proceedings. Reference is made to another clause of *269 the mortgage, where it is said that in no case shall the principal of any bond be considered due until twenty years after its date; but it is quite obvious, we think, that the latter clause was inserted merely to exclude any possible inference that a bondholder under any circumstances might bring an action for the principal of a bond before it became due by its terms. Such was, doubtless, the intention of the provision, but it does not in any manner conflict with the suggestion already made, that in case of sale on account of default of payment of interest or principal, that all the bonds of the same class, and the interest accrued thereon, shall be entitled to a pro rata dividend of the proceeds.
The decree of the Circuit Court is, therefore, reversed, with costs, and the cause remanded for further proceedings, in conformity with the opinion of this court.
Decree accordingly.
Mr. Justice DAVIS dissented.