## WOARMS v. HAMMOND.

EQUITY; EQUITABLE LIENS; TRUSTS AND TRUSTEES; DISCOVERY;
CONTRACTS.

1. When by an agreement in writing one party agrees with another
   to give a deed of trust upon all of his real estate in the District
   of Columbia if certain of his promissory notes shall not be paid
   on maturity, such other party is entitled, upon default in the
   payment of the notes, to an equitable lien upon such real estate;
   and equity will in such a case supply a trustee to enforce the
   lien and fix the terms of sale of the property.
2. Although the bill to enforce such an agreement calls for discovery
   by the defendant of all of his real estate when the land records
   are open to complainant, and although it alleges that defend-
   ant *neglected* after default and upon demand to execute the
   deed of trust, instead of that he *refused* so to do, it will not for
   those reasons be held demurrable.

No. 414.   Submitted January 21, 1895.   Decided February 5, 1895.

HEARING upon an appeal by the complainant from a decree
dismissing a bill for the enforcement of a contract. *Reversed.*

The COURT in its opinion stated the case as follows:

This is a suit in equity in which the appellants, Albert L.
Woarms, Louis J. Lesser, Martin S. Fechheimer and Sarah
Hess, who were the complainants in the court below, seek
the specific enforcement of a contract made by the appellee,
William A. Hammond, to give a lien on real estate for the
security of an existing indebtedness. The bill was dismissed
by the court below upon demurrer, and from the decree of dis-
missal the complainants have prosecuted the present appeal.

From the bill of complaint, it appears that the complain-
ants, who were vendors of artistic furniture and house
decorations in the city of New York, under the firm name
of D. S. Hess & Company, had furnished to the defendant
a large amount of the materials in which they dealt; and

that on January 2, 1891, the defendant was indebted to them on that account in the sum of $16,084.08. For this sum he executed and delivered to them on that day his six several promissory notes, each for $2,680.68 ; and to secure the payment of the same assigned to the complainants a policy of insurance on his life, issued by the Connecticut Mutual Life Insurance Company, of Hartford, in the State of Connecticut. It was also agreed between the parties that, in the event of default in the payment of any two of said notes, if the complainants should so elect and request in writing within ten days after such default, the note or notes remaining unpaid should be secured by deed of trust upon all the real estate then belonging to the defendant within the District of Columbia, and the defendant covenanted to execute such a deed of trust.

On January 5, 1894, one of these notes remaining unpaid, both as to principal and interest, the defendant entered into another agreement in writing with the complainants, apparently of the same tenor as the preceding one. This agreement, which forms the basis of the present suit, is as follows:

" Whereas, under the agreement made and entered into by and between Dr. William A. Hammond, of Washington, D. C., of the first part, and D. S. Hess & Co., of New York, of the second part, dated January 2, 1891, the last note therein referred to, payable in thirty-six months from the date of said agreement, with interest, has not been paid ; and whereas a request for an extension of time for such payment has been made by the said party of the first part ; and whereas, in consideration of the premises and of the sum of one dollar by each party hereto to the other paid, the receipt whereof is hereby acknowledged, it is agreed by and between the said Dr. William A. Hammond, party of the first part, and D. S. Hess & Co., party of the second part, that another note made by the said party of the first part, payable to his own order four months from date hereof, for the sum of thirty-one hundred and seventy-one $\frac{69}{100}$ dollars, with interest

at the rate of six per centum per annum until paid, shall be given to the party of the second part in payment of the balance due, which said note is secured by the assignment heretofore made of a life insurance policy for $25,000, No. 142,309, in the Connecticut Mutual Life Insurance Company, of Hartford, Connecticut, on the life of said Dr. William A. Hammond; and if said note shall not be paid at maturity, the party of the second part may elect and request in writing within ten days after such default that the said note shall be secured by deed of trust on all the real estate then belonging to said party of the first part within the District of Columbia; and the said party of the first part hereby agrees and covenants to execute said deed of trust. In witness whereof, the parties have hereunto set their hands and seals this fifth day of January, 1894."

The defendant executed and delivered to the complainants the promissory note provided to be given, for $3,171.69. It was not paid at maturity, and there were two extensions of it at the request of the defendant, the last of them expiring on June 30, 1894, with the agreement that the conditions and provisions of the contract of January 5, 1894, should remain in force. It still remained unpaid, both principal and interest, at the end of the last extension, and is yet unpaid.

On July 10, 1894, within the ten days specified in the agreement of January 5, 1894, the complainants elected and requested in writing that the defendant should execute the deed of trust which he had covenanted to execute upon default; but this it is alleged that he has neglected to do. It is also alleged that at the time of the default there was a large amount of real estate in the District of Columbia then belonging to the said defendant, but that the complainants were not able to describe the same.

The complainants claim, in virtue of their agreement, that has been set forth, to have an equitable lien upon the defendant's property therein mentioned, or in the alternative, that the agreement should be specifically performed; and the

prayer of the bill is to that effect, and for a discovery by the defendant of the property then belonging to him, and for an injunction against his conveyance or incumbrance of it.

To this bill of complaint the defendant interposed a demurrer, on the ground that the agreement sought to be enforced was wanting in mutuality, and was too vague and uncertain to be enforced by a court of equity. And the court below sustained the demurrer and dismissed the bill. From the decree of dismissal the complainants have appealed.

*Mr. James Lowndes* and *Mr. Walter D. Davidge, Jr.,* for the appellants :

1. The agreement of the defendant created an equitable lien or charge upon his real estate, and by virtue of it the complainants have the right in equity to have it applied in satisfaction of defendant's note. An agreement to give a mortgage creates an equitable lien or charge. Pomeroy Eq. Jur. Sec. 1235, 1237 ; *Countess of Mornington* v. *Keane,* 2 DeG. & J. 292; Jones on Mortgages, Sec. 163 ; *In re Howe,* 1 Paige, 130; *Bank* v. *Carpenter,* 7 Ohio, 69 ; *Lake* v. *Dodd,* 10 Ohio, 425; *Burgess* v. *Bank,* 3 McLane, 140 ; *Railroad* v. *Talmon,* 15 Ala. 472 ; *Bloom* v. *Noggle,* 4 Ohio, 45 ; *Abbott* v. *Godfrey,* 1 Mich. 179; *Ogden* v. *Ogden,* 4 Ohio N. S. 182; *Triebert* v. *Burgess,* 11 Md. 464; *Eng. Company* v. *Brunton,* 2 Q. B. 1893; *Johnson* v. *Dexter,* 2 MacA. 530 ; *Nelson* v. *Bank,* 27 Md. 51; *Biebinger* v. *Bank,* 99 U. S. 143.

2. The complainants are entitled to have the said contract of the defendant specifically enforced. It is true that the contract does not set forth any of the usual details of a deed of trust, but "*certum est quod certum reddi potest.*" This contract contains within itself all of the essential elements of a deed of trust, so that there can be no uncertainty as to the purpose of the parties.

It was argued that the contract is uncertain, because the trustees are not named in the deed of trust, but that uncertainty is cured by the rule of equity that no trust shall fail

for want of a trustee.    Perry on Trusts, 4th Ed., Vol. 1, Sec. 38.

But if there is uncertainty in the contract the uncertainty can be cured by legal presumption and the contract thus construed be enforced specifically.    Waterman on Spec. Perf., Sec. 150 ;  Fry on Spec. Perf., Secs. 349–351.

Where there is uncertainty as to time the contract will be considered to contemplate a reasonable time.    *Triebert* v. *Burgess*, 11 Md. 452.

*Mr. Samuel Maddox* for the appellee :

1. In order for a court of equity to decree specific performance of an agreement, it must be fair, just and reasonable, certain in all its parts, mutual, etc.    *Stoddart* v. *Bowie*, 5 Md. 95 ;  *Preston* v. *Preston*, 95 U. S. 202.    The agreement sought to be enforced in this case is neither fair, just nor reasonable.    But the element most lacking in it is that of certainty. Instead of being certain in all its parts, it is certain in none, so far at least as concerns that feature of it providing for the execution of a deed of trust.    The appellants are asking the court to direct the execution of a deed of trust on all of the appellee's real estate to secure a past due obligation.    To do this the court must complete the contract in the following particulars: Trustees must be named, time of sale fixed ; if more than one piece of real estate, the order of sale; what previous advertisement shall be given; the terms of sale ; commissions of trustees—in other words, to make a contract for the parties where they made none, and then enforce the contract so made.    This is never done.    *Hunt* v. *Administrators*, 1 Pet. 14.

2. It was manifestly not the intention of the parties that real estate security should be given in addition to the life insurance policy for $25,000, but as a substitute therefor. There is no averment in the bill that the insurance policy has been returned, or that any offer to do so has ever been made.

3. To permit the appellants to retain the insurance policy,

under the circumstances of this case, and have a deed of trust besides on all of appellee's real estate in the District of Columbia would be unjust, inequitable and unconscionable. There is no showing made that this policy is any less valuable now than it was in January, 1891, when it was deemed sufficient security for a debt of $16,000, since reduced by payments to about $3,200. And where there is anything by reason of a change of circumstances in regard to the property, that makes it unconscionable to decree execution of the contract, a court of equity will withhold its aid. *Iglehart* v. *Vail*, 73 Ill. 63 ; *Daniel* v. *Fraser*, 40 Miss. 515 ; *Gould* v. *Womack*, 2 Ala. 83 ; *King* v. *Hamilton*, 4 Pet. 328.

Mr. Justice MORRIS delivered the opinion of the Court:

The objection to the bill of complaint, because it fails to set forth any property of the appellee that could be affected by the claim of the appellants, is not entirely without foundation. The bill in this regard is rather loosely drawn. Under ordinary circumstances, the land records of the District of Columbia would show what real estate in the District the appellee held in his own name, or would lay the foundation for the ascertainment of such equitable interests as he held. But the appellants do not show that they had any recourse to those records, or that they made any attempt to ascertain what real estate the appellee possessed. Yet some of it was rather notorious. They allege, upon information and belief, that there was a large amount of real estate belonging to the appellee at the time of the maturity of their claim, but that they are not able to describe it. They show no reason for their inability to describe the property; and such inability might very well be the result of other causes than the want of knowledge of it. This looseness of allegation is rather unjustifiable; and yet it cannot be regarded as sufficient to defeat the right of the appellants to a discovery from the appellee of the real estate which he did actually hold; for that was a matter which was peculiarly, although

perhaps not exclusively, within his knowledge. He had covenanted to give a deed of trust on all the real estate that should belong to him at the time of the maturity of the note. It was his duty to tender that deed when the demand for it was made by the appellants; and it followed, of course, that he should have disclosed in that deed and described in it the real estate that then belonged to him. Discovery was by implication part of his contract.

Again: There is no allegation in the bill that the appellee had refused to execute the proposed deed of trust, but only that he had neglected to execute it. Neglect may amount to refusal, and often does, but not necessarily. It would seem to be reasonable that a person should not be called upon to respond to a suit in equity until there is positive violation of duty on his part, or positive refusal to execute a trust which it is incumbent upon him to execute. But no point is made in this regard by the appellee; and we do not regard it as of sufficient importance to defeat the claim of the appellants. We must observe, however, that the repeated demurrers interposed by the appellees should have induced the appellants to remove the palpable defects which those demurrers must necessarily have pointed out to them.

The important and substantial question in this case is, whether the appellants are entitled to an equitable lien upon the real estate of the appellee, under the agreement between them which has been set forth ?

Undoubtedly, that agreement is very inartificially and even ungrammatically drawn ; and under the somewhat rigid rules that are usually applied in ordinary cases for specific performance in equity, the conclusion reached by the court below in this case is not without justification. There might well be difficulty in decreeing the execution by the appellee of a deed of trust when no trustees had been agreed upon between the parties and none of the terms and conditions of the trust had been formulated by them in their contract. And yet it must be remembered that equity will not per-

mit a trust to fail for the want of trustees, and that the terms and conditions of a deed of trust intended to serve merely the purposes of a mortgage, are largely, like a mortgage itself, within the control of a court of equity.

But it would be a narrow and illiberal view to regard this case as one of ordinary specific performance.   It is true that the bill is framed for alternative relief, either to have an equitable lien declared upon the defendant's property or to have the defendant required to execute the deed of trust for which he had stipulated.   The substantial agreement of the parties is not for the conveyance of any property or the transfer of any right, but to give additional security, in a certain contingency for the payment of an existing indebtedness. That security was to be by way of lien upon the defendant's property.   The lien was the essence of the agreement; the form of the lien was a matter of no great consequence.   A mortgage or a deed of trust would serve the purpose equally well.   A deed of trust is the usual form of mortgage with us, and essentially is no more than a mortgage; and the purpose of both is to give a lien upon property, which a court of equity may enforce, whenever the parties have not bargained between themselves for any enforcement of it without the intervention of equity.

It is apparent from the agreement between the parties that no further time was to be given in the proposed deed of trust for the payment of the indebtedness, and that, therefore, such deed of trust should be subject to be enforced immediately upon its execution.   The appointment of trustees in that event would be wholly unimportant.   Their nomination might be conceded exclusively to the defendant; but if they failed to execute the trust properly or refused to do it, the court of equity could intervene and remove or control them, and do substantially what it is now asked to do here by the complainants.   It does not appear, therefore, that, by reason of the failure of the parties to agree upon trustees for the execution of their proposed deed

of trust, or by reason of their failure to specify in their agreement the terms upon which the trustees should execute their trust, the agreement is so vague and indefinite and so fatally defective that a court of equity must refuse to give it effect, especially when, as in the present case, there is no remedy whatever at law. For it is quite plain that a suit at law for the violation of the agreement would amount to no more than a suit at law upon the note or the indebtedness. And this evidently it was the purpose of the agreement to avoid. The manifest purpose of the agreement was that the complainants, in the event of the defendant's default, should have an assured and satisfactory remedy in equity through the means of a lien upon real estate, instead of being remitted exclusively to their ordinary remedy at common law, with its ordinary risks, contingencies and delays. Apparently, it was not deemed necessary by the complainants or expedient by the defendant to give the lien at the time the agreement was made; it was regarded as sufficient by both parties that the lien should arise only in the event of default, and that it should then be created at the option of the complainants, and be immediately enforceable.

Mr. Pomeroy, in his work on Equity Jurisprudence, Sec. 1235, lays down the rule, deduced from all the authorities, as to the effect of a contract such as that which is here in controversy. He says: " The doctrine may be stated in its most general form, that every express executory agreement in writing, whereby the contracting party sufficiently indicates an intention to make some particular property, real or personal, or fund, therein described or identified, a security for a debt or other obligation, or whereby the party promises to convey or assign or transfer the property as security, creates an equitable lien upon the property so indicated, which is enforceable against the property in the hands, not only of the original contractor, but of his heirs, administrators, executors, voluntary assignees, and pur-

chasers or encumbrancers with notice. Under like circumstances a mere verbal agreement may create a similar lien upon personal property. The ultimate grounds and motives of this doctrine are explained in the preceding section; but the doctrine itself is clearly an application of the maxim, ' Equity regards as done that which ought to be done.' In order, however, that a lien may arise in pursuance of this doctrine, the agreement must deal with some particular property, either by identifying it or by so describing it that it can be identified, and must indicate with sufficient clearness an intent that the property so described, or rendered capable of identification, is to be held, given or transferred as security for the obligation."

And again, the same author says in Section 1237: "The form or particular nature of the agreement which shall create a lien is not very material, for equity looks rather at the final intent and purpose than at the form; and if the intent appear to give, or to charge, or to pledge, property, real or personal, as a security for an obligation, and the property is so described that the principal things intended to be given or charged can be sufficiently identified, the lien follows. Among the kinds of agreement from which liens have been held to arise, the following are some important examples: Executory agreements which do not convey or transfer any legal estate in the property, but which stipulate that the property shall be security, or which pledge it for the performance of an obligation. As an agreement to give a mortgage creates a lien, so a mortgage which, through some informality or defect in its terms or mode of execution, is not complete and valid as a true and proper mortgage, will nevertheless generally create an equitable lien upon the property described. The intent to give a security being clear, equity will treat the instrument as an executory agreement for such security." And Mr. Jones, in his work on Mortgages, sums up the law on the subject as follows: "An agreement to give a mortgage, not objectionable for want of consideration, is

treated in equity as a mortgage, upon the principle that equity will treat that as done which by agreement is to be done. This doctrine has been asserted frequently both in this country and in England." Jones on Mortgages, Sec. 163.

Lord Chancellor Sugden, in the case of *Rolleston* v. *Morton*, 1 Drury & W. Ch. Rep. 195, said that, if a man has power to charge his lands, and agrees to charge them, in equity he has actually charged them, and a court of equity will execute the charge. In the case of *Nelson* v. *Hagerstown Bank*, 27 Md. 51, the Court of Appeals of Maryland said: "The rule that equity regards as done that which was agreed to be done will authorize an agreement to execute a mortgage to be treated in equity as a mortgage." In the case of *Bloom* v. *Noggle*, 4 Ohio St. 45, the Supreme Court of Ohio said: "Upon general equity principles, unaffected by statutory provisions, an agreement in writing for a mortgage is a valid contract fixing a specific lien on the property, and will be specifically enforced by a court of chancery." Other authorities to the same effect are numerous. *In re Howe*, 1 Paige, 125; *Delaire* v. *Keenan*, 3 DeSaussure, 74; *Triebert* v. *Burgess*, 11 Md. 452; *Farrell* v. *Bean*, 10 Md. 217; *Johnson* v. *Johnson*, 40 Md. 189; *Bank* v. *Carpenter*, 7 Ohio, 69; *Lake* v. *Doud*, 10 Ohio, 415; *Ogden* v. *Ogden*, 4 Ohio, N. S. 182; *Sturgess* v. *Bank of Cleveland*, 3 McLean, 140; *Johnson* v. *Dexter*, 2 MacArthur, 530; *Mornington* v. *Keane*, 2 DeG. & J. 292; *Wellesley* v. *Wellesley*, 4 Mylne & Cr. 561; Perry on Trusts, Sec. 122; 2 Story's Equity Jurisprudence, Sec. 1246. The authorities, in fact, are practically without dissent on the subject.

In the case of *Johnson* v. *Johnson*, 40 Md. 189, above cited, the Court of Appeals of Maryland entered into an elaborate discussion of this question, and reviewed the authorities at considerable length. That was a case in which a person had covenanted to pay certain sums of money out of the proceeds of sale of a certain farm. The court held the covenant to create an equitable lien or charge upon the land which

should be enforced by a court of equity. In its conclusion it says: "Such being the well established principle upon the subject, the agreement in this case must be taken as having created a charge upon the land, and raised a trust in respect thereto, as security for the payment of the plaintiff's debt; and hence it is the right of the latter, upon failure of the defendant to perform the trust, to have that trust specifically executed by a decree of a court of equity."

In that case the charge upon the land was only raised by implication. In the case before us there is an express contract to give a lien.

We have no difficulty, therefore, upon principle and authority, in holding that, by the agreement of the parties in this cause, there was created an equitable lien upon the lands of the appellee in the District of Columbia capable of being identified, which should be enforced by a court of equity.

We have already intimated that, while there might be difficulty in the specific enforcement of the agreement between the parties by the requirement of the execution of a deed of trust, yet there is no vagueness or uncertainty in the equitable lien created by the agreement which would prevent a court of equity from giving effect to it. The debt was due and payable; the deed of trust to be given was presently and immediately enforceable. The only things wanting to the completness of the agreement, if anything was wanting in contemplation of law, were a trustee to execute the trust, and determination of the terms of sale of the property. But these two things the court of equity can and will supply, and may control even in opposition to the wishes of the parties. They are not of the essence of the contract, and are not needed to give it operative vitality as an equitable lien. We fail to find in the contract any element of uncertainty that would preclude its enforcement by a court of equity; and we fail to find in it any such features of harshness or want of mutuality as are claimed on behalf of the appellee. So far as the present record shows, the contract

seems to be one that fully commends itself to the consideration of a court of equity.

We find ourselves, therefore, unable to concur in the conclusions reached by the court below. We think it was error to sustain the defendant's demurrer, and to dismiss the bill of complaint. And for that error we think that the decree of the court below *should be reversed, with costs, and the cause remanded to that court, with directions to overrule the defendant's demurrer, and for further proceedings according to law. And it is so ordered.*